FILED IN
COURT OF CRIMINAL APPEALS

May 15, 2015

ABEL ACOSTA, CLERK

WR-78,439-02
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/15/2015 1:52:06 PM
Accepted 5/15/2015 2:01:25 PM
ABEL ACOSTA
CLERK

**No. WR-78,439-02**

## IN THE COURT OF CRIMINAL APPEALS

## OF TEXAS

---

### EX PARTE

### DAMON WEST,

*Applicant*

---

On Application for a Writ of Habeas Corpus
In Cause Number W09-00248-Y(B)
In the District Court of Dallas County, Texas
Hon. Jeannine Howard, Judge Presiding

---

### APPLICANT'S BRIEF

---

**CHIP B. LEWIS**
SBN. 00791107
**ALICIA DEVOY ONEILL**
SBN. 24040801
1207 South Shepherd Drive
Houston, Texas 77018
(713) 523-7878
(713) 523-7887 (FAX)

ATTORNEYS FOR APPLICANT

ORAL ARGUMENT REQUESTED

## IDENTIFICATION OF THE PARTIES

Pursuant to Tex. R. App. P. 52.3(a), a complete list of the names of all interested parties is provided below.

| | |
|---|---|
| Applicant: | **Damon West**<br>TDCJ # 01585689<br>Mark W. Stiles Unit<br>3060 FM 3514<br>Beaumont, Texas |
| Prosecutors at Trial: | **Jennifer Morse**<br>**Felicia Oliphant**<br>Assistant District Attorneys<br>133 North Riverfront Boulevard<br>Dallas County, Texas |
| Prosecutor for Writ Proceedings:<br>(In Trial Court and in this Court) | **Jaclyn O'Connor Lambert**<br>Assistant District Attorney<br>133 North Riverfront Boulevard<br>Dallas County, Texas |
| Defense Counsel at Trial: | **Ed Sigel**<br>Attorney at Law<br>15950 Dallas Pkwy Ste 400<br>Dallas, TX  75248 |
| Defense Counsel for Writ Proceedings:<br>(In Trial Court and in this Court) | **Chip B. Lewis**<br>**Alicia Devoy O'Neill**<br>Attorney at Law<br>1207 S. Shepherd Dr.<br>Houston, Texas 77019 |
| Presiding Judge: | **Honorable Jeannine Howard**<br>Criminal District Court No. 6<br>Frank Crowley Courts Building<br>133 N Riverfront Blvd # 4<br>Dallas, Texas 75207 |

# TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES ...................................................................i

TABLE OF CONTENTS.............................................................................. ii

INDEX OF AUTHORITIES............................................................................ iii

STATEMENT OF THE CASE.......................................................................1

TRIAL COURT'S FINDINGS ....................................................................4

STATEMENT OF FACTS ...........................................................................6

SUMMARY OF THE ARGUMENT...........................................................10

SOLE ISSUE:

DID TRIAL COUNSEL RENDER INEFFECTIVE ASSISTANCE?...................10

ARGUMENT ..............................................................................................11

PRAYER .....................................................................................................62

CERTIFICATE OF SERVICE ...................................................................63

CERTIFICATE OF COMPLIANCE ..........................................................64

APPENDIX .................................................................................................65

Order Appointing April Smith ...................................................................A

Motion to Recuse, Order of Recusal, and Order of Assignment .............B

Trial Court's Proposed Findings of Fact and Conculsion of Law ...........C

# INDEX OF AUTHORITIES

**Cases**

*Beckham v. Wainwright,* 639 F.2d 262, 267 (5th Cir. 1981) ....................................19

*Catalan v. Cockrell*, 315 F.3d 491 (5th Cir.2002) ......................................................20

*Childress v. Johnson*, 103 F.3d 1221 (5th Cir. 1997) ................................................19

*Duncan v. Ornoski*, 528 F.3d 1222 (9th Cir. 2008) ...................................................12

*Ex parte Bratchett*, 513 S.W.2d 851 (Tex. Crim. App. 1974) ...................................19

*Ex parte Cash,* 178 S.W. 3d 816,818 ..............................................................................
................................................ 20, 23, 24, 29, 32, 34, 37, 39, 44,46, 48,50, 53, 57, 60

*Ex parte Cavett*, 521 S.W.2d 619 (Tex. Crim. App. 1975) ........................................19

*Ex parte Duffy*, 607 S.W.2d 507, 526 (Tex. Crim. App. 1980) ...................................
......................................................................................18, 19, 23, 32, 36, 42, 50

*Ex parte Ewing,* 570 S.W. 2d 941, 945 (Tex.Crim. App. 1978) ...................................
......................................................................................20, 23, 32, 37, 42, 46, 50, 57

*Ex parte Harris*, 596 S.W. 2d 893 (Tex. Crim. App. 1980) ......................................19

*Ex parte Howard*, 591 S.W.2d 906 (Tex. Crim. App. 1980) .....................................19

*Ex parte Lilly,* 656 S.W. 2d 490 (Tex. Crim. App. 1983) .........................................19

*Ex parte Marez*, 505 S.W.2d 930 (Tex. Crim. App. 1974) .......................................19

*Ex parte Raborn,*658 S.W.2d 602 (Tex. Crim. App. 1983) .........................................
......................................................................................18, 19, 23, 32, 36, 42, 50

*Ex parte Reed,* 271 S.W. 3d 698, 727 (Tex.Crim.App.200) .......................................6

*Ex Parte Walker*, 777 S.W. 2d 427 (Tex. Crim. App. 1989) ..............................41, 42

*Ex parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990).....................................
.........................................................................................18, 23, 32, 36, 42, 49

*Ex parte Ybarra,* 629 S.W. 2d 943 (Tex. Crim. App. 1982) .......................................
.....................................................................................18, 19, 23, 32, 36, 24, 50

*Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604
(2001) .......................................................................................................13, 60, 62

*Haynes v. State,* 790 S.W.2d 824 (Tex. App.—Austin 1990, no pet.) ....................20

*Hernandez v. State*, 726 S.W. 2d 53, 57 (Tex. Crim. App. 1986)...............................
.................................20, 23, 24, 28, 30, 32, 34, 37, 39, 44, 46, 48, 50, 53, 57, 60, 61

*Hutchinson v. State,* 663. S.W. 2d 610 (Tex. App.—Houston [1st Dist.] 1983, pet.
ref'd)........................................................................... ........................19, 41

*Jackson v. State,* 857 S.W. 2d 678 (Tex. App.—Houston [14th Dist.] 1993, pet.
ref'd)......................................................................................................20

*Milburn v. State,* 15 S.W. 3d 267 (Tex. App. –Houston [14th Dist.] 2000, pet.
ref'd).....................................................................................................57

*Mitchell v. State*, 762 S.W. 2d 916 (Tex. App.—San Antonio 1988, pet. ref'd) ....20

*Montez v.* State, 824 S.W.2d 308 (Tex. App. —San Antonio 1992, no pet.).........42

*Murphy v. State,*663 S.W.2d 604(Tex.App.—Houston [1st Dist.] 1983, no pet.) ...19

*Narvaiz v. State*, 840 S.W. 2d 415, 434 (Tex. Crim. App. 1992)...............................
.............................................20, 24, 28, 30, 33, 34, 37, 39, 44, 46, 48, 50, 53, 58, 61

*Picken v. Lockhart*, 714 F. 2d 1455, 1467 (8th Cir. 1983) ......................................57

*Sanders v. State*, 715 S.W.2d 771 (Tex. App.—Tyler 1986, no pet.) ....................19

*Strickland v. State*, 747 S.W. 2d 59 (Tex. App.—Texarkana 1988, no pet.) ..........19

iv

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ...............................................................................................
.........11, 12, 13, 20, 23, 24, 28, 30, 32, 34, 37, 39, 44, 46, 48, 50, 53, 57, 60, 61, 62

*Strickland v. Washington*, 466 U.S. 694, 104 S.Ct. 2068 ................................11, 12

*United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984) ...23

*United States v. Rusmisel*, 716 F2d 301 (5th Cir.1983)....................................12, 28

*West v. State,* No. 05-09-00577-CR WL 783616 (Tex.App.-Dallas, March 8, 2011, pet.ref'd)..............................................................................................................2

*Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)  .....11, 57

## American Bar Association Materials

*ABA Standards for Criminal Justice: The Defense Function,* Standard 4-4.1 (2d ed. 1986)..................................................................................................................11

## Constitutional Provisions, Statutes

*Tex. Crim. Pro. §38.21, 38.22, & 38.23*  ........................................................31, 32

*Tex. R. Evid. §402, 403, 404, 602, 701*  ........................................................35, 36

## ISSUES PRESENTED

## SOLE ISSUE

## DID TRIAL COUNSEL RENDER INEFFECTIVE ASSISTANCE?

## STATEMENT OF THE CASE

Applicant is currently in custody and being restrained of his liberty in the Texas Department of Criminal Justice – Institutional Division pursuant to conviction and judgment of the Criminal District Court #7 of Dallas County, Texas in cause number F09-00248.

Applicant entered a plea of not guilty to the first-degree felony charge of Engaging in Organized Criminal Activity (EOCA), in which the underlying felony was burglary of a habitation, in the Criminal District Court #7 of Dallas County, Texas on May 11, 2009. *See Reporter's Record of Proceedings Applicant's Jury Trial (Applicant's trial R.R.) Applicant's trial X R.R. at 8-9.* A jury convicted Applicant and then sentenced him to sixty-five (65) years in prison on May 18, 2009. *See Applicant's trial XIII R.R. at 76; XIV R.R. at 127-129.*

Applicant was represented during the pretrial and trial stage of cause number F09-00248 by retained lead counsel Edwin Sigel, as detailed below. Applicant was also represented at trial by second chair counsel Karen Lambert, as detailed below.

1

The Fifth Court of Appeals affirmed Applicant's conviction on March 8, 2011, and the Court of Criminal Appeals refused to grant discretionary review on September 14, 2011. *West v. State,* No. 05-09-00577-CR, 2011 WL 783616 (Tex.App.-Dallas March 8, 2011, pet.ref'd.)(not designated for publication). *See Applicant's Writ Exhibit 4, Opinion of the 5ᵗʰ Court of Appeals in State v. Damon West*. Applicant was represented during his direct appeal by retained counsel, Allan Fishburn. *See Applicant's Writ Exhibit 4.*

Applicant filed a *pro se* application for writ of habeas corpus in cause number W09-00248-Y(A). Counsel Sigel filed a sworn affidavit dated August 10, 2012 responding, in part, to ineffective assistance of counsel claims in Applicant's *pro se* application. *See Applicant's Writ Exhibit 1, Affidavit of Edwin Sigel*. Writ Counsel, Chip B. Lewis, filed a motion to dismiss the *pro se* application for writ without prejudice, which the Court of Criminal Appeals granted on April 3, 2013. The instant cause is an application for writ of habeas corpus filed by writ counsel on March 19, 2013, in W09-002480Y(B) and alleges in its sole ground for relief that Applicant was denied the effective assistance of counsel at the punishment stage of his trial.

Karen Lambert provided writ counsel with a credible sworn affidavit in relation to her involvement in Applicant's trial on February 27, 2013. *See Applicant's Writ Exhibit 3, Affidavit of Karen Lambert*. Writ counsel conducted a

recorded interview with Counsel Sigel on May 3, 2013. *See Transcript of Interview with Counsel Sigel (Writ Hearing R.R., Exhibit 91).* The Original Trial Court appointed Special Master, April Smith, to conduct a hearing if necessary and enter findings of fact and conclusions of law in Applicant's writ. *See Order Appointing April Smith, attached as Appendix A.* The Special Master ordered and held a live evidentiary hearing in this case on September 5, 2013. Applicant's lead trial counsel, Edwin Sigel, and second chair counsel, Karen Lambert, were called by Applicant and provided live, sworn, transcribed testimony and were cross-examined by the State of Texas. *See Reporter's Record of proceedings of 11.07 Writ Hearing (Writ Hearing R.R.).* At the conclusion of the hearing, the Special Master informed both parties that she would prepare findings of fact and conclusions of law recommending that relief be GRANTED to Applicant in the form of a new punishment hearing.

The Original Trial Court judge in this case, Michael Snipes, voluntarily recused himself, after he prematurely and improperly signed the State's proposed findings: without allowing the Special Master to comply with his own order that she prepare and present her findings; before the court reporter provided him with the record of the writ hearing; and before the parties could present argument. *See Motion to Recuse and Order of Recusal attached as Appendix B.* After the Original Trial Court's recusal, this Court remanded this writ to Dallas County, and

3

the case was reassigned to Dallas County Criminal District Court #7 (hereafter, the Trial Court) and Judge Jeannine Howard of that court instructed the Special Master to file her findings. In July of 2014, the Special Master issued findings recommending that the Trial Court and this Court grant the Applicant relief in the form of a new punishment trial due to harmful ineffective assistance of counsel. The Trial Court then properly reviewed all of the information from the writ and writ hearing and adopted the findings prepared by the Special Master and recommended to this Court that the Applicant be granted a new punishment trial due to ineffective assistance of counsel.

On March 18, 2015, this Court ordered that this case be filed and set for submission, and that the parties address the issue of ineffective assistance of counsel examined in this brief.

## TRIAL COURT'S FINDINGS

The Trial Court in this case entered findings based on credibility determinations and evidentiary findings made by the Special Master who presided over the live hearing in, and reviewed all material germane to, this writ. *See Trial Court's Proposed Findings of Fact and Conclusions of Law attached as Appendix C.*

The Trial Court's findings state, among other things, that in the Applicant's trial in this case: "Sigel was flying by the seat of his pants in this case due to his

4

failure to prepare,"; "Sigel failed to properly investigate the case and fully understand the charge against Applicant,"; "Sigel did not have a firm command of the facts or the law regarding EOC (Engaging in Organized Crime) or voluntary intoxication,"; "Sigel incorrectly informed Applicant that the State could not prove the EOC part of the indictment,"; "Sigel's cross examination clearly showed his lack of preparation and investigation or knowledge of the State's evidence. Sigel elicited damaging testimony during his cross-examination,"; "Sigel advanced numerous unreasonable trial strategies due to his unpreparedness,"; "Sigel… questioned many witnesses and presented witnesses that advanced the State's theory that Applicant was a privileged athlete who did not deserve leniency," and; Sigel failed to investigate or call available punishment witnesses that "would have contributed to the mitigation evidence. Failing to call these witnesses allowed the State to argue that the defense witnesses were worthless because they were politicians who had not interacted with the Applicant for more than five years. It also allowed for the State to argue that the jury should begin by considering a life sentence and take off five for every good thing they heard about Applicant at trial."

The Trial Court went on to specifically find, "Applicant has proven each of the allegations regarding ineffective assistance of counsel raised in his application," and "Applicant has proven that he received ineffective assistance of counsel. Applicant proved that counsel's representation fell below an objective

5

standard of reasonableness. And he proved that that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Applicant proved that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. Applicant has been denied the rights guaranteed to him by the United States Constitution or the Texas Constitution. This Court recommends that this writ of habeas corpus be granted."

The Court of Criminal Appeals will ordinarily defer to trial court's findings and conclusions that are supported by the record. *See Ex parte Reed*, 271 S.W.3d 698, 727 (Tex.Crim.App.2008). The Trial Court's findings recommending that Applicant be granted relief in the form of a new punishment trial are supported by the record, as discussed below, and as such this Court should defer to those supported findings.

## STATEMENT OF FACTS: COUNSEL SIGEL'S REPRESENTATION

Applicant was represented during the pretrial and trial stage of his case by lead counsel Edwin Sigel (Counsel Sigel). *See Applicant's Trial IV- XIV R.R.; Applicant's Writ Exhibit 1, 3.* Applicant's family hired Counsel Sigel sometime before the pretrial hearing held on October 16, 2008 – an exact date cannot be confirmed due to Counsel Sigel's failure to maintain Applicant's file. *See IV R.R. of Applicant's trial; Applicant's Writ Exhibit 1, 3.* Counsel Sigel failed to preserve

6

any part of his file in Applicant's case, erroneously believed it was in a storage unit that contained only his personal belongings, and is unable to offer any explanation for what happened to Applicant's file. *See Writ Hearing R.R. at 7-8.*

Counsel Sigel conducted pretrial hearings, set Applicant's case for trial, and acted as sole counsel until approximately sixty (60) days before the second "special set" trial setting in Applicant's case on May 11, 2009. *See Applicant's Jury Trial IV-VI R.R.; Applicant's Writ Exhibit 3.* Counsel Sigel had also previously announced ready for a "special set" February 2009 trial date but was unable to go to trial in Applicant's case on that date due to a personal medical event. *See Applicant's Writ Exhibit 3.* In Dallas County District Court Number 7 when a case is "special set" it means that everyone involved in the trial is on notice and agrees that the trial is definitely going to be tried by the court on that date. *See Applicant's Writ Exhibit 3.*

**Second-Chair Counsel Karen Lambert**

The facts asserted in Karen Lambert's (Ms. Lambert) sworn affidavit and writ hearing testimony are credible and reliable. *See Applicant's Writ Exhibit 3; Trial Court's Findings of Fact and Conclusions of Law.* Applicant's family hired Ms. Lambert on March 12, 2009, after Counsel Sigel's personal medical event, for the purpose of assisting Counsel Sigel at Applicant's upcoming trial. *See Applicant's Writ Exhibit 3.* Ms. Lambert has practiced criminal law in the Dallas

7

County area for over twenty-five (25) years, has tried over three hundred criminal cases to verdict, enjoys a positive professional reputation in the legal community, and is familiar with the objective standard of reasonableness for effective assistance of criminal defense counsel under the current prevailing norms. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 102-104; Trial Court's Findings of Fact and Conclusions of Law.*

All important decisions regarding relaying the State's evidence to Applicant, advising Applicant regarding his rights and plea, whether or not to set the case for trial, trial strategy, and identifying and designating lay witnesses for trial were made by Counsel Sigel before Ms. Lambert was hired to assist with the trial; Counsel Sigel never consulted Ms. Lambert regarding any of the lay witnesses, and none of them changed once she was hired. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 104-120.* Ms. Lambert's participation in Applicant's trial came from her volunteering to take on tasks – that she could attempt to complete in the limited time before trial – that she believed should have already been done by Counsel Sigel or needed to be done to protect Applicant's rights. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 104-120.* Ms. Lambert focused her involvement in Applicant's case on conducting discovery, properly filing motions to contest the search warrants, and preparing the defense experts to testify. *See Writ Hearing R.R. at 104-120.*

8

Ms. Lambert was made to feel unwelcome and like her help was not needed by Counsel Sigel during her involvement in Applicant's case. *See Writ Hearing R.R. at 115-116, 147.* Ms. Lambert repeatedly tried to meet with Counsel Sigel, including the weekend before trial, to help prepare for trial and so that he could inform her of what her exact role in trial was going to be, but was unable to get Counsel Sigel to agree to meet with her. *See Writ Hearing R.R. at 109-110.* Ms. Lambert became concerned during Counsel Sigel's *voir dire* because it was confusing to the jurors and didn't address the mitigation issues specific to their case. *See Writ Hearing R.R. at 111.* Counsel Sigel called Ms. Lambert's involvement in the trial a "betrayal" by the Applicant's family, stated that she was only hired on to deal with the mental health experts, and that his overall experience with her during trial was that, "she's an idiot." *See Writ Hearing Exhibit 25 at 26, 29-30, 39-40, and 91.* Counsel Sigel's writ hearing testimony that Ms. Lambert served as an equal participant in the trial and that he actively involved her in the strategic decisions made before and during Applicant's trial is not credible or reliable. *See Writ Hearing R.R. at 6-7; Trial Court's Findings of Fact and Conclusions of Law.*

**The State's Apparent Theory of Punishment Aggravation**

The State's apparent theory of punishment aggravation was that Applicant was a dangerous, unremorseful, privileged athlete from a good family who had

9

every advantage, was so poorly regarded that he didn't have anyone who recently had contact with him who was willing to testify to anything good about his character, and didn't deserve leniency from the jury. *See Applicant's Writ Exhibit 5.* The State explicitly challenged the jury to start their punishment deliberations at a life sentence, the top of the range of punishment, and "take off five" from the life sentence for every good thing they had heard about Applicant from the evidence introduced by Applicant at trial. *See Applicant's Writ Exhibit 5.*

## SUMMARY OF THE ARGUMENT

In his sole issue, the Applicant complains that his trial counsel was ineffective for failing to properly prepare, investigate, and represent the Applicant in his trial and that he was prejudiced at the punishment stage of his trial by counsel's ineffective assistance.

## SOLE ISSUE

DID TRIAL COUNSEL RENDER INEFFECTIVE ASSISTANCE?

### A. APPLICANT'S CLAIM

In his sole ground in his writ application, the Applicant maintains that trial counsel rendered ineffective assistance.

## B. ARGUMENT AND AUTHORITIES

## 1. DEFICIENT PERFORMANCE

Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), an ineffective assistance of counsel claim is subjected to a two-step analysis whereby the applicant must show that: (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceedings would have been different. S*trickland* defines reasonable probability as a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. The United States Supreme Court has explained that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Trial counsel has an absolute duty "to conduct a prompt investigation of the circumstances of the case and to explore all avenues likely to lead to facts relevant to the merits of the case." *ABA Standards for Criminal Justice: The Defense Function*, Standard 4-4.1 (2d ed. 1986).

An attorney's strategy can be so ill-chosen as to render a trial fundamentally unfair. *See, United States v. Rusmisel*, 716 F2d 301 310 (5th Cir.1983). As the Supreme Court explained in *Strickland*, strategy decisions should be judged by an objective standard of reasonableness. *Strickland v. Washington, supra*, 46 U.S. 687-88; 104 S.Ct. at 2064.

## 2. **PREJUDICE**

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), also requires that the applicant must show that "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceedings would have been different." S*trickland* defines reasonable probability as a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

To establish that trial counsel's deficient performance prejudiced Applicant, it is not necessary to show that counsel's conduct "more likely than not altered the outcome in the case." Rather, in determining whether a defendant was prejudiced by counsel's inadequate representation, this Court should examine the evidence that could have been presented to the jury had counsel performed competently, and compare that to the evidence that the jury actually heard. *Duncan v. Ornoski*, 528 F.3d 1222 (9th Cir. 2008). If the difference between the evidence that could have been presented and that which actually was presented is sufficient to "undermine

12

confidence in the outcome" of the proceeding, the prejudice prong is satisfied. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2052.

While a convicted defendant must establish actual prejudice from his attorney's conduct, the State cannot avoid the consequences of a finding of ineffective assistance by arguing that the prejudice is *de minimus*. For example, ***any amount of additional time in prison constitutes prejudice***. *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001)(emphasis added).

## C. <u>THE EVIDENCE REGARDING THE INEFFECTIVE ASSISTANCE CLAIM</u>

### 1. <u>Specific Claims, Supporting law, and Factual Support from the Record</u>

**(a). Counsel Sigel Failed to Properly Investigate and Inform Applicant of the Law of Engaging in Organized Criminal Activity (EOCA) and the Overwhelming Evidence of Applicant's Guilt in the State's Possession**

Counsel Sigel failed to sufficiently investigate, gain a firm command of, consult with, and inform Applicant regarding the EOCA law and the overwhelming evidence of Applicant's guilt of EOCA in the State's possession. *See Applicant's Writ Exhibit 2; See Writ Hearing Exhibit 25 at 17-20, 68; See Writ Hearing R.R. at 8-20, 23, 30-31, 35-36, 39, 68, 72.* The State had overwhelming

13

and voluminous evidence of guilt in the case against Applicant, including video, fingerprints, eyewitness identification, co-actor testimony, and DNA. *See Applicant's Jury Trial R.R.; Applicant's Writ Exhibit 1, 3.* Counsel Sigel's assertions that he did, or may have, personally thoroughly investigated, understood, and explained the EOCA law to Applicant are not credible or reliable. *See Writ Hearing R.R. at 8-20, 23, 30-31, 35-36, 39, 68, 72; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's assertions that he did, or may have, personally thoroughly investigated, understood, and explained the EOCA law to Applicant are directly contradicted by the fact that he admitted that he informed Applicant, who was confined to the Dallas County Jail, that Applicant should take it upon himself to look up anything that he did not understand about the EOCA charge in his case on the internet. *See Writ Hearing R.R. at 92.* Counsel Sigel's assertions that he did, or may have, personally thoroughly reviewed all of the evidence in the State's possession are not credible or reliable. *See Writ Hearing R.R. at 35-36, 79; Trial Court's Findings of Fact and Conclusions of Law.*

Counsel Sigel stated that he relied on Applicant's original version of facts alone to form the opinion that Applicant was not guilty of EOCA. *See Writ Hearing R.R. at 79-80.* Counsel Sigel misinformed Applicant that the State could not prove the EOCA charge against Applicant. *See Applicant's Writ Exhibit 2; Writ Hearing R.R. at 23, 30-31, 68, 121, 128-129, 150-151; Trial Court's Findings*

14

*of Fact and Conclusions of Law.* Counsel Sigel's assertions that he personally thoroughly reviewed all of the evidence in the State's possession are directly contradicted by the Reporter's Record from Applicant's trial and his own assertion that Ms. Lambert did discovery, prepared for trial, and likely knew information about the State's case that he did not know and that this led to the admission of damaging evidence. *See Applicant's Jury Trial R.R.; Writ Hearing Exhibits 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 25 at 91; Trial Court's Findings of Fact and Conclusions of Law.*

Counsel Sigel admitted that he only informed Applicant of some pieces of evidence against him and then let Applicant learn other pieces of evidence by listening to the witnesses testify about them at trial. *See Writ Hearing R.R. at 35-36.* Counsel Sigel stated that he "wasn't able to discuss a lot of things with Damon West prior to trial" and that he let Applicant learn some of the incriminating evidence against him by listening to the witnesses testify at trial because Applicant was in jail and it was "a big job to go through everything with Damon." *See Writ Hearing R.R. at 35-36, 39.*

Ms. Lambert stated that there was nothing about Applicant's status of being in jail that made it impossible to properly communicate with Applicant. *See Writ Hearing R.R. at 118.* Ms. Lambert stated that no reasonable attorney would rely on a client's version of the facts of a case alone and that she would only form her

15

belief of the strength of a case based on conducting a thorough discovery process. *See Writ Hearing R.R. at 149-150.* Ms. Lambert stated that no reasonable attorney would have informed Applicant that the State could not prove the EOCA charge against Applicant in this case and that doing so would have tremendous sway with any client. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 121, 150.* Ms. Lambert stated that any reasonable criminal attorney would have fully consulted with Applicant, confronted him with all of the State's evidence of guilt of EOCA, and urged Applicant to enter a plea of guilty to the jury. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 139-141, 144-145.*

Counsel Sigel's assertion that he fully investigated and knew all of the evidence against Applicant and intentionally chose to only inform Applicant of some pieces of evidence against him and let Applicant learn others by listening to the witnesses testify at trial because he was in jail and is not credible or reliable. *See Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's failure to inform Applicant of all of the evidence against him in the State's possession was due to the fact that he had not properly investigated and reasonably prepared for the trial in Applicant's case and was himself not aware of the evidence in the possession of the State, until it was admitted in front of the jury, at trial. *Id.* Assuming *arguendo* that Counsel Sigel did intentionally only inform Applicant of some pieces of evidence against him and let Applicant learn others by

16

listening to the witnesses testify at trial because Applicant was in jail and it was "a big job to go through everything with Damon," his actions were not reasonable or effective trial strategy in Applicant's case and constituted deficient performance. *See Trial Court's Findings of Fact and Conclusions of Law.* There is absolutely no plausible basis for the strategy or tactic of Counsel Sigel's failure to properly investigate, gain a firm command of, consult with and inform Applicant of EOCA law and the overwhelming evidence of Applicant's guilt of EOCA in the State's possession. Counsel Sigel's failure to properly investigate, gain a firm command of, consult with and inform Applicant of the EOCA law and the overwhelming evidence of Applicant's guilt in the State's possession constituted deficient performance. *Id.*

Counsel Sigel lost credibility with the jury and wholly failed to advance his apparent trial strategy of mitigation by failing to properly investigate, gain a firm command of, consult with and inform Applicant of the EOCA law and the overwhelming evidence of Applicant's guilt in the State's possession. Counsel Sigel's failure to properly investigate, gain a firm command of, consult with and inform Applicant of the EOCA law and the overwhelming evidence of Applicant's guilt in the State's possession resulted in Applicant taking Counsel Sigel's advice and pleading not guilty and requesting a jury trial which invited the State's theory that Applicant was unremorseful, privileged athlete from a good family who had

17

every advantage, and didn't deserve leniency from the jury. *See Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law.*

Applicant was unable to make an informed decision to enter a plea or to request a jury trial because Counsel Sigel failed to properly inform Applicant of the EOCA law and of the overwhelming evidence of Applicant's guilt in the State's possession. *See Trial Court's Findings of Fact and Conclusions of Law.* Applicant did not make an informed personal decision to enter his plea in the primary case. *Id.*

Counsel Sigel never conducted the necessary legal and factual investigation into Applicant's case, which would have enabled him to make an informed rational decision to pursue any given course of conduct within the realm of trial strategy. *Ex Parte Duffy*, 607 S.W.2d 507, 526 (Tex. Crim. App. 1980). Counsel Sigel failed to fulfill his duty to make an independent investigation of the facts in Applicant's case. *See Ex Parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990); *Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982); *Ex parte Raborn*, 658 S.W.2d 602 (Tex. Crim. App. 1983); *Ex Parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980). Counsel Sigel's stated reliance on Applicant's original recounting of the facts of the case did not fulfill his duty to make an independent investigation of the facts in Applicant's case. *See Ex Parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990); *Ex Parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980). Counsel

Sigel failed to gain a firm command of the facts of Applicant's case and of the law governing Applicant's case before Applicant's trial. *See Ex Parte Ybarra,* 629 S.W.2d 943, 946 (Tex.Cr.App.1982); *Ex Parte Duffy,* 607 S.W.2d 507, 526 (Tex.Cr.App.1980).

Counsel Sigel failed to fulfill his duty "to advise the defendant of the available options and possible consequences" of the different pleas that may be entered to a criminal charge. *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981)(citation omitted). Counsel Sigel failed to properly advise Applicant concerning determining how to plead and whether he should enter a guilty plea. *Childress v. Johnson*, 103 F.3d 1221 (5th Cir. 1997). Counsel Sigel failed to confer with Applicant sufficiently to prepare a defense. *See Ex parte Marez*, 505 S.W.2d 930 (Tex. Crim. App. 1974); *Ex parte Bratchett*, 513 S.W.2d 851 (Tex. Crim. App. 1974); *Ex parte Cavett*, 521 S.W.2d 619 (Tex. Crim. App. 1975); *Ex parte Howard*, 591 S.W.2d 906 (Tex. Crim. App. 1980); *Ex parte Harris*, 596 S.W.2d 893 (Tex. Crim. App. 1980); *Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982); *Ex parte Lilly*, 656 S.W.2d 490 (Tex. Crim. App. 1983); *Ex parte Raborn*, 658 S.W.2d 602 (Tex. Crim. App. 1983); *Murphy v. State*, 663 S.W.2d 604 (Tex. App.— Houston [1st Dist.] 1983, no pet.); *Hutchinson v. State*, 663 S.W.2d 610 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd); *Sanders v. State*, 715 S.W.2d 771 (Tex. App.—Tyler 1986, no pet.); *Strickland v. State*, 747

19

S.W.2d 59 (Tex. App.—Texarkana 1988, no pet.); *Mitchell v. State*, 762 S.W.2d 916 (Tex. App.—San Antonio 1988, pet. ref'd); *Haynes v. State*, 790 S.W.2d 824 (Tex. App.—Austin 1990, no pet.); *Jackson v. State*, 857 S.W.2d 678 (Tex. App.—Houston [14thDist.] 1993, pet. ref'd); *Catalan v. Cockrell*, 315 F.3d 491 (5th Cir. 2002). There is absolutely no plausible basis in the strategy or tactics for Counsel Sigel's actions of failing to properly investigate and inform Applicant of the law of engaging in organized criminal activity and the overwhelming evidence of guilt in the State's possession. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978).

Applicant has shown that, but for trial counsel's failure to properly investigate and inform Applicant of the law of EOCA and the overwhelming evidence of guilt in the State's possession, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the Strickland standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part Strickland standard).

**(b) Counsel Sigel Failed to Properly Investigate and Inform Applicant of the Option and Advantages of Pleading Guilty to the Jury**

20

Counsel Sigel never informed Applicant that he could plead guilty to the jury and ask the jury to assess his punishment. *See Applicant's Writ Exhibits 2, 3; Writ Hearing Exhibit 25 at 12-14; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel never advised Applicant that a plea of guilty to the jury would be a good way to try to mitigate his punishment. *See Applicant's Writ Exhibits 2, 3; Writ Hearing Exhibit 25 at 12-14; Writ Hearing R.R. at 18-20, 39, 72, 81, 88; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel advised Applicant that the best way to mitigate his punishment would be to plead not guilty to the jury and then let the jury assess his punishment. *See Applicant's Writ Exhibit 2; Writ Hearing Record at 14-16, 83.* Counsel Sigel stated that he never informed Applicant that he could plead guilty to the jury and ask them to assess his punishment or that a guilty plea would be a good way to try to mitigate his punishment because he doesn't "particularly care for" pleas of guilty to the jury and does not "do them." *See Writ Hearing Exhibit 25 at 13-14.*

Ms. Lambert stated that she believes strongly that a plea of guilty to the jury in this case would have been the superior way to try to mitigate Applicant's punishment. *See Applicant's Writ Exhibit 3.* Ms. Lambert stated that she believes any reasonable criminal attorney would have fully explained to Applicant the option of pleading guilty to the jury, confronted him with all of the State's evidence, and strongly encouraged him to plead guilty. *See Applicant's Writ*

21

*Exhibit 3.* Ms. Lambert stated that she never witnessed Counsel Sigel do any of these things and that Counsel Sigel's choice to not do so did not advance counsel's apparent trial strategy of mitigation. *See Applicant's Writ Exhibit 3.*

Counsel Sigel's decision to not inform and admonish Applicant of the option and full strategic advantage of a plea of guilty to the same jury that would assess punishment after hearing the State's overwhelming evidence of guilt because Counsel Sigel doesn't "particularly care for" pleas of guilty to the jury and does not "do them" was not reasonable or effective trial strategy in Applicant's case. *See Trial Court's Findings of Fact and Conclusions of Law.* There is absolutely no plausible basis for the strategy or tactics of Counsel Sigel's failure to inform Applicant of the option and advantages of pleading guilty to the jury. Counsel Sigel's failure to inform Applicant that he could plead guilty to the jury and ask them to assess his punishment constituted deficient performance. *See Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's failure to inform Applicant that a plea of guilty to the jury would be a good way to try to mitigate his punishment constituted deficient performance. *Id.* Counsel lost credibility with the jury and wholly failed to advance his apparent trial strategy of mitigation by failing to explain to Applicant the option and advantages of pleading guilty to the jury. *Id.* Counsel Sigel's failure to explain to Applicant the option and advantages of pleading guilty to the jury resulted in Applicant pleading not guilty and

22

requesting a jury trial which invited the State's theory that Applicant was unremorseful, privileged athlete from a good family who had every advantage, and didn't deserve leniency from the jury. *See Applicant's Writ Exhibit 5; Id.*

Applicant was unable to make the personal decisions to enter a plea and to request a jury trial because Counsel Sigel never made him aware of the possible risks and benefits of entering a plea of not guilty and requesting a jury trial. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Counsel did not and could not make a sound strategic decision to not inform Applicant of the option and advantages of pleading guilty to the jury because he failed to properly investigate and prepare for trial. *See Ex Parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990); *Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982); *Ex parte Raborn*, 658 S.W.2d 602 (Tex. Crim. App. 1983); *Ex Parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980). There is absolutely no plausible basis in the strategy or tactic of Counsel Sigel's failure to properly investigate and inform Applicant of the option and advantages of pleading guilty to the jury. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978). Applicant has shown that, but for trial counsel's failure to properly investigate and inform Applicant of the option and advantages of pleading guilty to the jury, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726

23

S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

Applicant was unable to make an informed decision to enter a plea of not guilty and to request a jury trial because he was not made aware of the possible risks and benefits of entering a plea of not guilty and of requesting a jury trial. *See Trial Court's Findings of Fact and Conclusions of Law.* Applicant did not make an informed personal decision to enter a plea of not guilty in the primary case. *Id.* Applicant has shown that, but for trial counsel's failure to properly investigate and inform Applicant of the option and advantages of pleading guilty to the jury, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

**(c) Counsel Sigel's Stated Strategy and Employment of the "Nickel Defense" and/or the "Truth Defense"**

Counsel Sigel stated that he does not believe in ever advising a client to plead guilty to the jury and instead believes in something he has created and named the "nickel defense" and/or the "truth defense." *See Writ Hearing R.R. at 14-16.*

24

Counsel Sigel's "nickel defense" involved him attempting to mitigate Applicant's punishment by advising Applicant to enter a plea of not guilty and then Counsel Sigel making the unilateral decision to present the entire truth by letting every single piece of evidence in – whether the evidence was admissible or not, harmful to Applicant or not, and offered by the State or not – during the guilt/innocence phase of Applicant's trial. *See Writ Hearing Exhibit 25 at 9-14; Writ Hearing R.R. at 14-16, 44, 48-49.* Counsel Sigel never consulted with or informed Applicant or Ms. Lambert regarding his stated strategy to let the jury know the truth through the use of the "nickel defense," never explained the "nickel defense" to either, and never got Applicant's consent before pursuing the "nickel defense" in Applicant's trial. *See Writ Hearing Exhibit 25 at 9-14, 66, 68; Writ Hearing R.R. at 71-72, 110-112, 131-132, 140; Trial Court's Findings of Fact and Conclusions of Law.*

Counsel Sigel's assertions that he did, or possibly did, try to explain the "nickel defense" to Applicant are not credible or reliable and are directly contradicted by his admission that, "(n)o. I never explained the nickel," to Applicant. *See Writ Hearing R.R. at 71-72; Writ Hearing Exhibit 25 at 66; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel stated that pursuing the whole truth by having Applicant plead not guilty and then letting every piece of possible evidence in whether it helped or harmed Applicant during guilt/innocence was done to help mitigation and make the jury see Counsel Sigel as

25

an honest lawyer. *See Writ Hearing R.R. at 86.* Counsel Sigel's assertions that he intentionally pursued the truth by having Applicant plead not guilty and then let every piece of possible evidence in during guilt/innocence to help mitigation and make the jury trust Counsel Sigel are not credible or reliable and are directly contradicted by the fact that he indeed objected to some pieces of evidence and attempted to keep them out, and not to others, throughout Applicant's trial. *See Applicant's Jury Trial R.R.*

Ms. Lambert stated that Counsel Sigel never informed her of the existence of or his intent to use the "nickel defense" or the "truth defense." *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 110-112, 131-132, 140.* Ms. Lambert stated that Counsel Sigel should have fully informed and gotten the consent of Applicant before advancing the novel "nickel defense" and that it was a violation of his duty to Applicant and not reasonable to have not done so. *See Writ Hearing R.R. at 139-141.* Ms. Lambert stated that it is not reasonable or effective trial strategy for a defense attorney to pursue the whole truth by letting every single piece of evidence in – whether the evidence was admissible or not, harmful or not, and offered by the State or not – during the guilt/innocence phase of Applicant's trial. *See Writ Hearing R.R. at 110-112, 131-132.* Ms. Lambert stated that the evidence that came in at trial as a result of Counsel Sigel's implementation of the "nickel defense" or

26

"truth defense" harmed Counsel Sigel's apparent strategy of punishment mitigation. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 110-112, 132.*

Counsel Sigel's decision to advise Applicant to plead not guilty and then his action of letting many damaging pieces of evidence in during guilt/innocence was due to the fact that he had not properly investigated and reasonably prepared for the trial in Applicant's case and was not aware of the damaging evidence in the State's possession before it was elicited from witnesses, and admitted in front of the jury, at trial. *See Trial Court's Findings of Fact and Conclusions of Law.* Assuming *arguendo* that Counsel Sigel did intentionally decide to pursue the whole truth by having Applicant plead not guilty and then let every piece of possible evidence in during guilt/innocence to somehow help mitigation and make the jury trust Counsel Sigel was not a reasonable or effective trial strategy in Applicant's case and constituted deficient performance. *Id.* Counsel Sigel failed to sufficiently admonished Applicant of the possible negative consequences and strategic downfalls of his stated strategy to pursue the whole truth through the use of the "nickel defense." *Id.* Counsel Sigel's failure to inform Applicant of, explain, admonish, and get Applicant's consent to use his stated strategy to pursue the whole truth through the use of the "nickel defense" in order to make the jury trust Counsel Sigel was not reasonable or effective trial strategy in Applicant's case. *Id.* Counsel Sigel's actions in advising Applicant to enter a plea of not guilty and then

27

Counsel Sigel making the unilateral decision to advance his stated strategy to "pursue the truth" by letting every single piece of evidence in – admissible or not, harmful or not, and offered by the State or not, during the guilt/innocence phase of trial was not reasonable or effective trial strategy in Applicant's case. *Id*.

When judged by an objective standard of reasonableness, Counsel Sigel's stated strategy to purse the truth by letting every single piece of evidence in – admissible or not, harmful or not, and offered by the State or not, during the guilt/innocence phase of trial, through the use of his "nickel defense" was so ill-chosen that it rendered Applicant's trial fundamentally unfair. *See United States v. Rusmisel,* 716 F.2d 301, 310 (5th Cir. 1983); *Strickland v. Washington*, *supra*, 466 U.S. 687-88; 104 S.Ct. at 2064. Applicant has shown that, but for trial counsel's unreasonable unilateral decision to advance his stated strategy to "pursue the truth" by letting every single piece of evidence in – admissible or not, harmful or not, and offered by the State or not, during the guilt innocence phase of trial through the use of his "nickel defense," the result of the punishment proceeding would have been different. *See Ex Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

There is absolutely no plausible basis for the stated strategy or tactics of Counsel Sigel's decision to "purse the truth" through the use of the "nickel defense" in Applicant's trial. *See Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's decision to advance his stated strategy to "purse the truth" through the use of the "nickel defense" in Applicant's trial constituted deficient performance. *Id.* Counsel Sigel lost credibility with the jury and wholly failed to advance his apparent trial strategy of mitigation by failing to explain to Applicant the option and advantages of pleading guilty to the jury. *Id.* Counsel Sigel's stated strategy to pursue the truth resulted in many pieces of evidence that were damaging to Applicant be admitted in front of the jury. *Id.* Applicant was unable to make an informed decision to enter a plea of not guilty and to request a jury trial after consultation with Counsel Sigel because Counsel Sigel did not make him aware of the existence of or possible risks of entering a plea of not guilty and pursuing Counsel Sigel's plan to pursue the whole truth through the use of the "nickel defense" during a jury trial. *Id.* Applicant did not make an informed personal decision to enter a plea of not guilty and pursue the "nickel defense" in the primary case. *Id.*

Applicant has shown that, but for trial counsel's stated strategy and employment of the "Nickel Defense" and/or the "Truth Defense" in this case, the result of the punishment proceeding would have been different. *See Ex Parte Cash*,

29

178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

**(d) Counsel Sigel Failed to Object to Detective Gilbert Travis' Testimony Regarding Applicant's Inadmissible Unrecorded Oral Statement Taken During Custodial Interrogation**

Counsel Sigel failed to timely object when the State called Detective Gilbert Travis (Detective Travis) to testify about the unrecorded oral statement he took from Applicant during a custodial interrogation after Applicant's arrest in this case. *See Applicant's Writ Exhibit 6.* Detective Travis testified that according to his memory of this unrecorded custodial interrogation, Applicant made many false denials of responsibility in the burglaries, wanted to blame unknown other people for the crimes, and claimed to not know how the stolen items got in the car he was driving. *See Applicant's Writ Exhibit 6.* Applicant did not testify at his trial and this denial of responsibility, recounted from the memory of an adverse witness, served as the only statement that the jury ever heard Applicant make when directly questioned about the offense. *See Applicant's Jury Trial R.R.* Counsel Sigel never timely objected to the admission of the unrecorded custodial interrogation and only objected when the court *sua sponte* noted its glaring inadmissibility by stating,

30

"(i)t's clearly not admissible," and asked for an objection outside of the presence of the jury after the jury had already heard the testimony in its entirety. *See Applicant's Writ Exhibit 6.* When asked by the trial court to articulate its theory of admissibility for the offered unrecorded custodial interrogation in Applicant's trial the State stood silent on the record and did not offer any possible theory of admissibility. *See Applicant's Writ Exhibit 6.* Detective Travis' testimony regarding Applicant's denial of responsibility during the unrecorded custodial interrogation this case was an inadmissible unrecorded statement under Texas law. *See T.C.C.P. § 38.21, 38.22, & 38.23*.

Counsel Sigel's assertion at the writ hearing that he may have known about the statement's inadmissible nature before the trial began is not credible or reliable. *See Writ Hearing R.R. at 31-38; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's assertions that he intentionally let the unrecorded custodial interrogation evidence in to pursue the whole truth and to let every single piece of evidence in as part of his "nickel defense," are not credible or reliable and are directly contradicted by the fact that, once prompted by the trial court, he objected, asked that the jury be instructed to disregard the evidence, and moved for a mistrial. *See Writ Hearing R.R. at 31-38.*

Ms. Lambert stated that she would have objected to the testimony in an attempt to protect Applicant's rights based on the inadmissible nature of this

statement. *See Writ Hearing R.R. at 126-127.* Ms. Lambert stated that Counsel Sigel failed to object to this testimony and that failing to object to this testimony did not advance Counsel Sigel's sworn trial strategy of mitigation. *See Applicant's Exhibit 3; Writ Hearing R.R. at 127.*

Counsel Sigel did not and could not make a sound strategic decision to not timely object to the admission of the unrecorded custodial interrogation because he failed to properly investigate and prepare for trial. *See Ex Parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990); *Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982); *Ex parte Raborn*, 658 S.W.2d 602 (Tex. Crim. App. 1983); *Ex Parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980). Detective Travis' testimony regarding Applicant's denial of responsibility during the unrecorded custodial interrogation this case was an inadmissible unrecorded statement under Texas law. *See T.C.C.P. § 38.21, 38.22, & 38.23.* There is absolutely no plausible basis in the strategy or tactic of Counsel Sigel's failure to timely object to the admission of the unrecorded custodial interrogation. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978). Applicant has shown that, but for trial counsel's failure to timely object to the admission of the unrecorded custodial interrogation, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland*

32

standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

Counsel Sigel's failure to timely object to the inadmissible statement was due to the fact that he had not properly investigated and reasonably prepared for the trial in Applicant's case and was not aware of the issues with the statement before the evidence was ever elicited by the State, and admitted in front of the jury, at trial. *See Trial Court's Findings of Fact and Conclusions of Law.* Assuming *arguendo* that Counsel Sigel did intentionally let the unrecorded custodial interrogation evidence in to pursue the whole truth and to let every single piece of evidence in as part of his "nickel defense," that was not a reasonable or effective trial strategy in Applicant's case. *Id*. There is absolutely no plausible basis for the stated strategy or tactics of Counsel Sigel's failure to timely object to the admission of the unrecorded custodial interrogation. *Id*. Counsel Sigel's failure to timely object to the unrecorded custodial interrogation constituted deficient performance. *Id*. Counsel Sigel's failure to timely object to the unrecorded custodial interrogation was not consistent with and did not advance Applicant's defensive strategy of mitigation. *Id*. The admission of the unrecorded custodial interrogation reinforced the State's theory and argument that Applicant was a dangerous, unremorseful, privileged athlete from a good family who had every advantage, was so poorly regarded that he didn't have anyone who recently had

contact with him who was willing to testify to anything good about his character, and didn't deserve leniency from the jury. *See Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law*.

Applicant has shown that, but for trial counsel's failure to object to testimony regarding Applicant's inadmissible unrecorded oral statement taken during custodial interrogation, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

**(e) Counsel Sigel Failed to Object to Detective Travis' Speculative Testimony that Applicant Was in Possession of the Identification of a Police Officer Because He Was Planning to Use It to Commit Crimes While Impersonating a Police Officer**

Counsel Sigel failed to object when the State elicited speculative testimony from Detective Travis that Applicant was in possession of items of identification from a police officer because Applicant was going to use them to commit extraneous future crimes while impersonating a police officer. *See Applicant's Writ Exhibit 7*. The State elicited inadmissible speculative extraneous testimony from

34

Detective Travis regarding his guess as to what crimes Applicant might commit with the police identification that was in his possession as a result of a burglary. *See Applicant's Writ Exhibit 7.* Detective Travis was allowed to speculate that he was concerned that Applicant was going to use the identification to commit further scarier crimes while impersonating a police officer. *See Applicant's Writ Exhibit 7.* The State never had in its possession, or offered any evidence at trial, that Applicant targeted the homes of police officers, ever impersonated a police officer for any purpose, or planned to commit extraneous crimes while impersonating a police officer. *See Applicant's Jury Trial R.R.; Writ Hearing R.R. at 127-128.* Detective Travis' testimony regarding his guess as to what crimes Applicant would commit with the police identification that was in his possession as a result of a burglary was inadmissible speculation and extraneous evidence under Texas law. *See T.R.E. §402, 403, 404, 602, 701; Trial Court's Findings of Fact and Conclusions of Law.*

Counsel Sigel's assertion at the writ hearing that he may have known about the statement's inadmissible nature before the trial began is not credible or reliable. *See Writ Hearing R.R. at 39-41; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's assertions that he intentionally let the speculative extraneous testimony in to pursue the whole truth and to let every single piece of evidence in as part of his "nickel defense," are not credible or reliable. *See Writ Hearing R.R.*

35

*at 14-16; Trial Court's Findings of Fact and Conclusions of Law.*

Ms. Lambert stated that a review of discovery showed that there was no allegation that Applicant had impersonated a police officer and that she would not have asked any such open-ended question that would allow an adverse witness to speculate on issues that would harm Applicant. *See Writ Hearing R.R. at 127-128.* Ms. Lambert stated that Counsel Sigel failed to object to this testimony and that failing to object to this testimony did not advance Counsel Sigel's sworn trial strategy of mitigation. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 128.*

Detective Travis' testimony regarding his guess as to what crimes Applicant would commit with the police identification that was in his possession as a result of a burglary was inadmissible speculation and extraneous evidence under Texas law. *See T.R.E. §402, 403, 404, 602, 701.* Counsel did not and could not make a sound strategic decision to not object to the inadmissible speculative extraneous testimony from Detective Travis regarding his guess as to what crimes Applicant might commit with the police identification that was in his possession as a result of a burglary because he failed to properly investigate and prepare for trial. *See Ex Parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990); *Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982); *Ex parte Raborn*, 658 S.W.2d 602 (Tex. Crim. App. 1983); *Ex Parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980). There is absolutely no plausible basis in the strategy or tactic of Counsel Sigel's failure to

36

object to the inadmissible speculative extraneous testimony from Detective Travis regarding his guess as to what crimes Applicant might commit with the police identification that was in his possession as a result of a burglary. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978). Applicant has shown that, but for trial counsel's failure to object to the inadmissible speculative extraneous testimony from Detective Travis regarding his guess as to what crimes Applicant might commit with the police identification that was in his possession as a result of a burglary, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d at 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

Counsel Sigel's failure to timely object to the speculative extraneous testimony was due to the fact that he had not properly investigated and reasonably prepared for trial in Applicant's case and was not aware of the issues with the statement before the evidence was elicited by the State, and admitted in front of the jury, at trial. *See Trial Court's Findings of Fact and Conclusions of Law.* Assuming *arguendo* that Counsel Sigel did intentionally let the speculative extraneous testimony in to pursue the whole truth and to let every single piece of evidence in as part of his "nickel defense," that was not a reasonable or effective trial strategy

37

in Applicant's case. *Id*. There is absolutely no plausible basis for the stated strategy or tactics of Counsel Sigel's failure to timely object to the admission of the speculative extraneous testimony. *Id*. Counsel Sigel's failure to timely object to the admission of the speculative extraneous testimony constituted deficient performance. Counsel Sigel's failure to timely object to the speculative extraneous testimony was not consistent with and did not advance Applicant's defensive strategy of mitigation. *Id.*

The admission of the speculative extraneous testimony invited the State to argue that the jury should fear Applicant and that he was more dangerous because he was going to commit future crimes while dressed as a police officer making him even harder to recognize as a criminal. *See Applicant's Writ Exhibit 5; Id.* The admission of the speculative extraneous testimony reinforced the State's theory that Applicant was a dangerous, unremorseful, privileged athlete from a good family who had every advantage, was so poorly regarded that he didn't have anyone who recently had contact with him who was willing to testify to anything good about his character, and didn't deserve leniency from the jury. *See Applicant's Writ Exhibit 5; Id.*

Applicant has shown that, but for trial counsel's failure to properly object to speculative testimony that Applicant was in possession of the identification of a police officer because he was planning to use it to commit other crimes while

impersonating a police officer, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

**(f) Counsel Sigel Elicited Harmful and Aggravating Testimony from Witnesses that the State Did Not Elicit and Therefore Would Not Have Otherwise Been Presented to the Jury**

Counsel Sigel elicited the following harmful and aggravating testimony on cross-examination of State's witnesses, Counsel Sigel: (a) repeatedly led witness Chatham to tell the jury that Applicant could not have known that Chatham was out of town at the time of the burglary – in spite of the fact that all the burglaries were committed intentionally when no one was home and no one was harmed was strongly mitigating for Applicant; (b) elicited testimony from Detective Travis showing that Applicant's paperwork from a previous probation was found mixed in amongst the stolen items in the car he was arrested in – due to counsel's utter lack of investigation and erroneous belief that there was no actual link between Applicant and the stolen items inside of the car; (c) elicited testimony from Officer Johnson regarding Applicant's possession of Viagra, a drug known to be

39

synonymous with increased sexual performance, in addition to methamphetamine when Applicant was arrested sweaty and running through an apartment complex – when there had been no implication of crimes of a sexual nature in these offenses before this testimony; (d) asked open-ended questions to Detective Solis, the lead investigator for the case, inviting him to speculate that the reason Applicant stole women's underwear was to intimidate witnesses; that the reason Applicant would stay at the crime scenes and eat and drink was that he was not scared of the small female victims coming home early and that, had they come home, Applicant surely would have harmed them; and that the reason there were no fingerprints in any of the homes burglarized was because of the stockpile of gloves officers found in the possession of Applicant; (e) identified Applicant as person who committed burglary – even though witness Scialo previously testified she could not identify applicant in a line-up as the burglar in the crime she witnessed; and (f) elicited testimony that the vehicle Applicant was arrested in, full of stolen items, belonged to Applicant's brother Grayson – inviting the State to further advance theory that Grayson, who counsel did not investigate or call the testify, was the victim of Applicant's most egregious crime. *See Applicant's Writ Exhibits 8, 9, 10, 11, 12, 13*.

Counsel Sigel's assertion at the writ hearing that he may have known about this harmful and aggravating testimony that he was eliciting on cross-examination

of State's witnesses before the trial began is not credible or reliable. *See Writ Hearing R.R. at 41-52; Trial Court's Findings of Fact and Conclusions of Law*. Counsel Sigel's assertions that he intentionally elicited this harmful and aggravating testimony on cross-examination of State's witnesses to pursue the whole truth and to let every single piece of evidence in as part of his "nickel defense," are not credible or reliable. *See Writ Hearing R.R. at 49; Id.*

Ms. Lambert stated that she thoroughly reviewed all of the discovery materials in Applicant's case and would not have elicited the harmful and aggravating nature of this elicited testimony. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 148.* Ms. Lambert stated that Counsel Sigel elicited this testimony and that eliciting this testimony did not advance Counsel Sigel's sworn trial strategy of mitigation. *See Applicant's Writ Exhibit 3.*

Counsel Sigel conducted ineffective cross-examination of State's witnesses when he bolstered, rather than challenged, the prosecution witnesses by eliciting and emphasizing harmful and aggravating evidence against Applicant. *See Hutchinson v. State*, 663 S.W.2d 610 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd); *Ex Parte Walker*, 777 S.W.2d 427 (Tex. Crim. App. 1989). Counsel Sigel conducted ineffective cross-examination of State's witnesses when he elicited harmful and aggravating testimony including extraneous offenses in questioning witnesses. *See Hutchinson v. State*, 663 S.W.2d 610 (Tex. App.—Houston [1st

41

Dist.] 1983, pet. ref'd); *Ex Parte Walker*, 777 S.W.2d 427 (Tex. Crim. App. 1989); *Montez v. State*, 824 S.W.2d 308 (Tex. App.—San Antonio 1992, no pet.). Counsel did not and could not make a sound strategic decision to elicit harmful and aggravating testimony on cross-examination of State's witnesses because he failed to properly investigate and prepare for trial. *See Ex Parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990); *Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982); *Ex parte Raborn*, 658 S.W.2d 602 (Tex. Crim. App. 1983); *Ex Parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980). There is absolutely no plausible basis in the strategy or tactic of Counsel Sigel's eliciting harmful and aggravating testimony on cross-examination of State's witnesses. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978). Counsel did not and could not make a sound strategic decision to advancement of unreasonable strategies in front of the jury because he failed to properly investigate and prepare for trial. *See Ex Parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990); *Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982); *Ex parte Raborn*, 658 S.W.2d 602 (Tex. Crim. App. 1983); *Ex Parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980).

Counsel Sigel's elicitation of this harmful and aggravating testimony on cross-examination of State's witnesses was due to the fact that he had not properly investigated and reasonably prepared for the trial in Applicant's case and was not aware of the harmful and aggravating nature of the elicited testimony before he

42

asked the questions, and the evidence was admitted in front of the jury, at trial. *See Trial Court's Findings of Fact and Conclusions of Law.* Assuming *arguendo* that Counsel Sigel did intentionally elicit this harmful and aggravating testimony to pursue the whole truth and to let every single piece of evidence in as part of his "nickel defense," that was not a reasonable or effective trial strategy in Applicant's case. *Id*. There is absolutely no plausible basis for the stated strategy or tactics of Counsel Sigel's elicitation of this harmful and aggravating testimony. *Id.*

Counsel Sigel elicitation of this harmful and aggravating testimony on cross-examination of State's witnesses constituted deficient performance. *Id.* Counsel Sigel's elicitation of this harmful and aggravating testimony was not consistent with and did not advance Applicant's defensive strategy of mitigation. *Id.* The admission of this harmful and aggravating testimony invited the State to argue to start their punishment deliberations at a life sentence, the top of the range of punishment, and "take off five" from the life sentence for every good thing they had heard about Applicant from the evidence introduced at trial. *See Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law*. The admission of this harmful and aggravating evidence reinforced the State's theory that Applicant was a dangerous, unremorseful, privileged athlete from a good family who had every advantage, was so poorly regarded that he didn't have anyone who recently had contact with him who was willing to testify to anything

43

good about his character, and didn't deserve leniency from the jury. *See Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law.*

Applicant has shown that, but for trial counsel's eliciting harmful and aggravating testimony from witnesses that would not have otherwise been presented to the jury, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

**(g) Counsel Sigel Failed to Properly Investigate Applicant's Case and Properly Prepare for Trial, Resulting in Counsel Employing and Advancing Numerous Unreasonable Trial Strategies in Front of the Jury**

Counsel Sigel advanced the following unreasonable strategies in front of the jury, Counsel Sigel: (a) asserted to the jury that voluntary intoxication is by itself legally mitigating under existing Texas law and asked for a jury instruction so stating – without ever attempting to allege or prove insanity; (b) questioned many witnesses, and called defense mitigation witnesses, in a way that clearly advanced the State's theory that Applicant was a remorseless, privileged athlete from a good

44

family who had every advantage and did not deserve leniency; (c) harassed and humiliated witness Aurora Gonzales by making her state her bra size in front of the jury and court, when this was not a contested issue of any kind at Applicant's trial; (d) failed to make any opening statement in punishment of Applicant's trial, leaving the State's opening claims wholly unanswered, after telling the jury that he would make an opening at the beginning of the defense's case; (e) tormented witness Haddad by making her recount the specific metals her deceased fiancé was awarded in his service in Iraq when this was not a contested issue of any kind at Applicant's trial, causing her to become emotional in front of the jury and making her even more sympathetic. *See Applicant's Writ Exhibits 15, 16, 17, 18, 19.*

Counsel Sigel's assertions that he intentionally employed these unreasonable strategies to pursue the truth and to let every single piece of evidence in as part of his "nickel defense," are not credible or reliable. *See Writ Hearing R.R. at 53-62; Trial Court's Findings of Fact and Conclusions of Law.*

Ms. Lambert stated that she would not have utilized these unreasonable trial strategies that Counsel Sigel employed in Applicant's case. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 129-132.* Ms. Lambert states that Counsel Sigel employed these unreasonable strategies and that their employment did not advance Counsel Sigel's apparent trial strategy of mitigation. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 129-132.*

45

There is absolutely no plausible basis in the strategy or tactic of Counsel Sigel's advancement of unreasonable strategies in front of the jury. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978). Applicant has shown that, but for trial counsel's advancement of unreasonable strategies in front of the jury, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

Counsel Sigel's advanced the unreasonable strategies in front of the jury due to the fact that he had not properly investigated and reasonably prepared for the trial in Applicant's case and was not aware of the harmful and aggravating nature of the unreasonable strategies before he advanced them, and the evidence was admitted in front of the jury, at trial. *See Trial Court's Findings of Fact and Conclusions of Law*. Assuming *arguendo* that Counsel Sigel did intentionally advance the unreasonable strategies to "pursue the truth" and to let every single piece of evidence in as part of his "nickel defense," his actions were not reasonable or effective trial strategy in Applicant's case. *Id.* There is absolutely no plausible basis for Counsel Sigel's advancement of these unreasonable strategies. *Id.* Counsel Sigel's advancement of these unreasonable strategies in front of the jury

46

constituted deficient performance. *Id.* Counsel Sigel's advancement of these unreasonable strategies was not consistent with and did not advance Counsel Sigel's apparent defensive strategy of mitigation. *Id.*

The advancement of these unreasonable strategies invited the State to argue to start their punishment deliberations at a life sentence, the top of the range of punishment, and "take off five" from the life sentence for every good thing they had heard about Applicant from the evidence introduced at trial. *See Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's advancement of these unreasonable strategies harmed Counsel Sigel's apparent trial strategy of mitigation, caused Applicant to lose credibility with the jury, harassed witnesses, and alienated the jury. *Id.* Counsel Sigel's advancement of these unreasonable strategies reinforced the State's theory that Applicant was a dangerous, unremorseful, privileged athlete from a good family who had every advantage, was so poorly regarded that he didn't have anyone who recently had contact with him who was willing to testify to anything good about his character, and didn't deserve leniency from the jury. *See Applicant's Writ Exhibit 5;Trial Court's Findings of Fact and Conclusions of Law.*

Applicant has shown that, but for trial counsel's failure to properly investigate Applicant's case and properly prepare for trial that resulted in counsel employing and advancing numerous unreasonable trial strategies, the result of the

47

punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

**(h) Counsel Sigel Failed to Investigate or Prepare the Defense's Six Lay Punishment Mitigation Witnesses and Had Ms. Lambert Leave the Courtroom During Trial to Attempt to Quickly Conduct the Only Preparation Ever Done with the Witnesses**

Counsel Sigel failed to investigate or properly prepare the defense's six lay punishment mitigation witnesses before Applicant's trial. *See Applicant's Jury Trial XIII R.R. at 16-36; XIV R.R. at 2-40; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's assertions that he may have spoken with and prepared the lay punishment mitigation witnesses by intentionally only advising them to tell the truth are not credible or reliable. *See Writ Hearing R.R. at 16-17, 27-28; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel admitted that he doesn't always believe in interviewing and preparing character witnesses to testify before calling them to the stand to testify. *See Writ Hearing R.R. at 99.* Counsel Sigel admitted that sometimes he prepares witnesses regarding

48

what to expect on cross-examination and sometimes he does not. See *Writ Hearing R.R. at 28.*

Ms. Lambert stated that Counsel Sigel never identified the lay witnesses to her or asked her to contact, prepare, or present any lay witnesses before Applicant's trial. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 111.* Ms. Lambert stated that she became concerned with Counsel Sigel's abilities during trial and decided to interview and prepare the mitigation witnesses who were present, who Counsel Sigel had failed to prepare, to testify during trial itself in an attempt to protect Applicant's rights. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 132-133.* Ms. Lambert stated that she was unable to adequately prepare the witnesses to testify in the short time she had to speak with them in the hallway. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 132-135.* Ms. Lambert stated that Counsel Sigel's failure to investigate and properly prepare these witnesses did not advance Counsel Sigel's apparent trial strategy of mitigation. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 132-135.*

Counsel Sigel failed to adequately prepare the mitigation witnesses to testify at trial. *Ex Parte Guzmon*, 730 S.W.2d 724 (Tex. Crim. App. 1987). Counsel did not and could not make a sound strategic decision not to adequately prepare the mitigation witnesses to testify at trial because he failed to properly investigate and prepare for trial. *See Ex Parte Wellborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990);

49

*Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982); *Ex parte Raborn*, 658 S.W.2d 602 (Tex. Crim. App. 1983); *Ex Parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980). There is absolutely no plausible basis in the strategy or tactic of Counsel Sigel's failure to adequately prepare the mitigation witnesses to testify at trial. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978). Applicant has shown that, but for trial counsel's failure to adequately prepare the mitigation witnesses to testify at trial, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

Counsel Sigel's failure to investigate and properly prepare the lay witnesses was due to the fact that he had not properly investigated and reasonably prepared for the trial in Applicant's case and was not aware of what the witnesses knew or would say before they took the stand and the evidence was admitted in front of the jury at trial. *See Trial Court's Findings of Fact and Conclusions of Law.* Assuming *arguendo* that Counsel Sigel did intentionally only prepare the witnesses by advising them to tell the truth to advance the unreasonable strategies to "pursue the

50

truth" and to let every single piece of evidence in as part of his "nickel defense," his actions were not reasonable or effective trial strategy in Applicant's case. *Id.*

There is absolutely no plausible basis for the stated strategy or tactics of Counsel Sigel's failure to investigate and properly prepare the lay mitigation witnesses. *Id.* Counsel Sigel failure to investigate or properly prepare the defense's six lay punishment mitigation witnesses in any manner before Applicant's trial constituted deficient performance. *Id.* Counsel Sigel's failure to investigate and properly prepare the lay mitigation witnesses was not consistent with and did not advance Applicant's defensive strategy of mitigation. *Id.* Counsel Sigel's failure to investigate and properly prepare the lay mitigation witnesses allowed the State to bring out on cross examination that none of the witnesses were familiar with the circumstances of the crimes Applicant had been convicted of and that witness Schechter had not been close with Applicant in many years, witness Morrow had not been close with Applicant in many years, and even Applicant's own father had only talked to him on the phone and seen him once or twice a year in the last ten years. *See Applicant's Jury Trial XIII R.R. at 16-37; XIV R.R. at 2-40.* Counsel Sigel's failure to investigate and properly prepare the lay mitigation witnesses invited the State to argue that Applicant was trying to manipulate the jury into showing mercy that he did not deserve by calling powerful politicians and that the defense mitigation witnesses were worthless because, "(t)hey want to awe you with

51

the title of these people so that you will look past what they were really telling you when none of them have had any kind of quality interaction with him for the last five years." *See Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law.*

Counsel Sigel's failure to investigate and properly prepare the lay mitigation witnesses harmed Counsel Sigel's apparent trial strategy of mitigation, caused Applicant to lose credibility with the jury, and left witnesses not properly prepared to testify on direct and cross-examination. *See Applicant's Jury Trial XIII R.R. at 16-37; XIV R.R. at 2-40; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's failure to investigate and properly prepare the lay mitigation witnesses invited the State to elicit testimony detrimental to Applicant from wholly unprepared witnesses. *See Applicant's Jury Trial R.R. XIII R.R. at 16-37; XIV R.R. at 2-40; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's failure to investigate and properly prepare the lay mitigation witnesses reinforced the State's theory that Applicant was a dangerous, unremorseful, privileged athlete from a good family who had every advantage, was so poorly regarded that he didn't have anyone who recently had contact with him who was willing to testify to anything good about his character, and didn't deserve leniency from the jury. *See Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law.*

Applicant has shown that, but for trial counsel's failure to properly investigate and prepare the Defense's six lay punishment witnesses, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

**(i) Counsel Sigel Failed to Investigate and Call Witnesses Grayson West, Brandon West, and Danielle Delgadillo**

Counsel Sigel failed to investigate and call witnesses Grayson West, Brandon West and Danielle Delgadillo. *See Writ Hearing R.R. at 16-30.* The affidavits of Grayson West, Brandon West, and Danielle Delgadillo are credible and reliable. *See Applicant's Writ Exhibits 20, 21, 22; Trial Court's Findings of Fact and Conclusions of Law.* Grayson West and Brandon West are Applicant's brothers and Danielle Delgadillo is Applicant's childhood friend and all three remained in close contact with Applicant throughout the time surrounding the offenses and the trial. *See Applicant's Writ Exhibits 20, 21, 22.* Grayson West, Brandon West, and Danielle Delgadillo were willing and available to testify in Applicant's trial, both Grayson and Brandon were present in the courtroom during trial, but that they were never contacted, interviewed, designated as witnesses, or

53

called to the stand by Counsel Sigel in any manner. *See Applicant's Writ Exhibits 20, 21, 22; Writ Hearing R.R. at 16-30; Trial Court's Findings of Fact and Conclusions of Law.* Grayson West, Brandon West, and Danielle Delgadillo had ongoing, meaningful, close personal relationships with Applicant and would have offered testimony that would have humanized him for the jury. *See Applicant's Writ Exhibits 3, 20, 21, 22; Trial Court's Findings of Fact and Conclusions of Law.*

Counsel Sigel admitted that he did not know at the time of Applicant's trial that any witnesses existed who had ongoing, meaningful, close personal relationships with Applicant and would have humanized him for the jury by offering testimony that Applicant was off drugs and getting back to his true self. *See Writ Hearing R.R. at 25.* Counsel Sigel admitted that he was not aware that Grayson West had battled drug addiction throughout his life in much the same manner as Applicant. *See Writ Hearing R.R. at 27.* Counsel Sigel admitted that the reason that the jury sentenced Applicant to so much time was because "the jury just didn't know Damon West" at the end of the defense's mitigation evidence. *See Writ Hearing Exhibit 25 at 75-76; Trial Court's Findings of Fact and Conclusions of Law.*

Grayson West, Brandon West, and Danielle Delgadillo would have each testified to a high number of facts, each of which the jury could have counted as a

54

"good thing," about Applicant and used to take 5 years off of his sentence. *See Applicant's Writ Exhibits 20, 21, 22; Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law.* The testimony of Grayson West, Brandon West, and Danielle Delgadillo would have advanced Counsel Sigel's apparent strategy of mitigation. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 136-137; Trial Court's Findings of Fact and Conclusions of Law.*

Ms. Lambert reviewed the three witnesses' affidavits and stated that Counsel Sigel never asked her to contact, prepare, or present any lay witnesses. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 137.* Ms. Lambert stated that Counsel Sigel did not call the three, above listed, witnesses and that she believes that they could have been helpful in humanizing Applicant and in providing insight into the defense's mitigation evidence. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 137.* Ms. Lambert stated that the decision to not interview and call these witnesses was made by Counsel Sigel without consulting her and that the failure to call the witnesses did not advance Counsel Sigel's sworn trial strategy of mitigation. *See Exhibit 3; Writ Hearing R.R. at 137.*

Counsel Sigel's assertions that he had not investigated and called the three mitigation witnesses to testify because Applicant did not testify are not credible or reliable. *See Writ Hearing R.R. at 22, 24; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel's assertions that he strongly advised and

55

repeatedly requested that Applicant testify at his trial are not credible or reliable. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 87, 92, 141-142, 144-145, 147-148;Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel stated that when he allegedly spoke to Applicant about possibly testifying he did not believe that Applicant understood what he was saying to him at that time. *See Writ Hearing R.R. at 18-19, 87-88; Trial Court's Findings of Fact and Conclusions of Law.* Counsel Sigel admitted that Ms. Lambert was sitting next to, and present with, Applicant during the entire trial. *See Writ Hearing R.R. at 39.*

Ms. Lambert stated that though she was present for all of the conversations between Counsel Sigel and Applicant at trial that she never once heard Counsel Sigel advise, ask, or beg Applicant to testify at his trial. *See Applicant's Writ Exhibit 3; Writ Hearing R.R. at 144-145, 147-148.* Ms. Lambert was not aware of or present for *any* efforts on Mr. Sigel's part to prepare Applicant to testify at trial in any manner. *See Writ Hearing R.R. at 144-145, 147-148.* Ms. Lambert stated that it is not a reasonable or good strategy for Counsel Sigel to have not called these three mitigation witnesses in Applicant's trial because Applicant did not testify. *See Writ Hearing R.R. at 153-154.* Ms. Lambert stated that she believed that there was a chance that the jury would have given Applicant probation based on his possible mitigation presentation. *Writ Hearing R.R. at 149-150.*

Counsel did not and could not make a sound strategic decision to not call Brandon West, Grayson West, and Danielle Degadillo because he failed to investigate and interview the witnesses. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Milburn v. State*, 15 S.W.3d 267 (Tex. App. – Houston [14th Dist.] 2000, pet. ref'd.). There is absolutely no plausible basis in the strategy or tactic of Counsel Sigel's failure to investigate and call mitigation witnesses Brandon West, Grayson West, and Danielle Degadillo. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978). The testimony of Brandon West, Grayson West, and Danielle Degadillo was admissible and would have provided some counterweight to evidence of bad character which was in fact received by the jury. *See Blake v. Kemp,* 758 F.2d 523, 535 (11 th Cir.1985), *cert. denied,* 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985). The jury would have considered the testimony of Brandon West, Grayson West, and Danielle Degadillo and possibly been influenced by it. *See Milburn v. State*, 15 S.W.3d 267 (Tex. App. – Houston [14th Dist.] 2000, pet. ref'd.); *Pickens v. Lockhart,* 714 F.2d 1455, 1467 (8th Cir.1983). Applicant has shown that, but for Counsel Sigel's failure to investigate and call mitigation witnesses Brandon West, Grayson West, and Danielle Degadillo there is a reasonable probability that the result of the punishment proceeding would have been different. *Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.

57

App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

Counsel Sigel's failure to investigate and call the three witnesses was due to the fact that he had not properly investigated and reasonably prepared for the trial in Applicant's case and was not aware of what the witnesses knew or would say if they took the stand. *See Trial Court's Findings of Fact and Conclusions of Law.* Assuming *arguendo* that Counsel Sigel did intentionally decide to not call the three witnesses because the Applicant was not going to testify, his actions were not reasonable or effective trial strategy in Applicant's case. *Id.* There is absolutely no plausible basis for the stated strategy or tactic of Counsel Sigel's failure to investigate and call the three mitigation witnesses. *Id.*

Counsel Sigel's failure to investigate and call the three mitigation witnesses to testify in Applicant's case constituted deficient performance. *Id.* Counsel Sigel's failure to investigate and call the three mitigation witnesses was not consistent with and did not advance Applicant's defensive strategy of mitigation. *Id.* Counsel Sigel's failure to investigate and call the three mitigation witnesses resulted in Counsel Sigel only calling witnesses who had not had any truly meaningful contact with Applicant in the years around the offenses, were high-profile political contacts of Applicant's father who had not spoken to Applicant in years, and who

58

knew nothing current about Applicant. *See Applicant's Writ Exhibit 5; Applicant's Jury Trial XIII R.R. at 16-37; XIV R.R. at 2-40; Trial Court's Findings of Fact and Conclusions of Law.*

Counsel Sigel's failure to investigate and call the three mitigation witnesses invited the State to argue that Applicant was trying to manipulate the jury into showing mercy that he did not deserve by calling powerful politicians and that the defense mitigation witnesses were worthless because, "(t)hey want to awe you with the title of these people so that you will look past what they were really telling you when none of them have had any kind of quality interaction with him for the last five years." *See Applicant's Writ Exhibit 5.* Counsel Sigel's failure to investigate and call the three mitigation witnesses invited the State to argue the jury should start their punishment deliberations at a life sentence, the top of the range of punishment, and "take off five" from the life sentence for every good thing they had heard about Applicant from the evidence introduced at trial. *See Applicant's Writ Exhibit 5; Trial Court's Findings of Fact and Conclusions of Law.*

Counsel Sigel's failure to investigate and call the three mitigation witnesses reinforced the State's theory that Applicant's recorded phone calls were an accurate reflection of his true evil personality, that his brothers were angry with him, that they (especially baby brother Grayson) should be counted by the jury as victims of his most egregious crimes, and that Applicant had no empathy for

59

anyone including his own brothers. *See Applicant's Writ Exhibit 5.* Counsel Sigel's failure to investigate and call the three mitigation witnesses reinforced the State's theory that Applicant was a dangerous, unremorseful, privileged athlete from a good family who had every advantage, was so poorly regarded that he didn't have anyone who recently had contact with him who was willing to testify to anything good about his character, and didn't deserve leniency from the jury. *See Trial Court's Findings of Fact and Conclusions of Law.*

Had Counsel Sigel properly investigated and called the three mitigation witnesses they would have testified to numerous "good things" about Applicant (included in their affidavits attached to Applicant's writ as Exhibits 20, 21, and 22), the jury would have bee able to use them to follow the State's direction and "take off five" for every good thing they heard about Applicant, and sentence Applicant to a lower number of years in prison. *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001). The affidavits include numerous "good thing(s)" which would have resulted in a reduction in prison time of five years each. *Id.* Applicant has shown that, but for trial counsel's failure to properly investigate call witnesses Grayson West, Brandon West, and Danielle Delgadillo, the result of the punishment proceeding would have been different. *See Ex Parte Cash*, 178 S.W.3d 816, 818; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting

60

the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard).

**(j) Totality of Counsel Sigel's Representation of Applicant**

The totality of Counsel Sigel's representation of Applicant fell below the objective standard of reasonableness and was therefore deficient. *See Trial Court's Findings of Fact and Conclusions of Law.* But for Counsel Sigel's errors, there is a reasonable probability that Applicant would have been sentenced to less than sixty-five (65) years in the Texas Department of Criminal Justice in the primary case. Applicant's sixty-five (65) year sentence is not worthy of confidence. *Id.* Counsel Sigel was not functioning as counsel as guaranteed by the United States Constitution and Counsel Sigel's deficient performance prejudiced Applicant. *Id.* Applicant has met his burden of proving by a preponderance of the evidence that he was denied the effective assistance of counsel in the punishment trial of this case. *Id.*

Applicant has shown that Counsel Sigel acted in a deficient manner which resulted in prejudice in the punishment trial in his case. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard); and *Hernandez v. State*, 988 S.W. 2d 770 (Tex. Crim. App. 1999) (adopting the two-part *Strickland* standard for evaluating ineffective assistance of counsel at the

61

punishment stage of noncapital trials).

The totality of the representation afforded to Applicant was not sufficient to protect his right to reasonably effective assistance of counsel. *See Trial Court's Findings of Fact and Conclusions of Law.* Applicant has succeeded in demonstrating that he has been prejudiced by counsel's deficient actions because they resulted in Applicant being sentenced to an additional amount of time in prison. *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001). In all things Applicant has succeeded in demonstrating that his sentence was improperly obtained and that he is being improperly confined.

The Applicant has proven, by a preponderance of evidence, that trial counsel's deficient performance, should undermine any confidence this Court could have in the verdict. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Applicant requests that this Court exercise its authority to adopt the Trial Court's findings and conclusions, and find that trial counsel's performance was deficient and that the prejudice prong of *Strickland* in this regard has been satisfied.

## PRAYER

For the reasons stated above, as well as for those reasons stated previously, the Applicant pays that this Court GRANT relief in the form of A NEW PUNISHMENT TRIAL.

62

Respectfully submitted,

_____/s/ Chip B. Lewis_____
CHIP LEWIS
State Bar of Texas Number 00791107
ALICIA DEVOY ONEILL
State Bar of Texas Number 24040801
1207 South Shepherd Drive
Houston, Texas 77019
(713)-523-7878
(713)-523-7887 (FAX)

ATTORNEY FOR APPLICANT

### CERTIFICATE OF SERVICE

I certify that I provided a copy of the foregoing brief to the Dallas County District Attorney by mailing it to Lori Ordiway, Chief of the Appellate Division, via first class mail and e-serving on the day the brief was e-filed.

_____/s/ Chip B. Lewis_____
**Chip B. Lewis**

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e)(i):

1.	Exclusive of the portions exempted by Tex. R. App. Proc. 9.4 (i)(1), this brief contains **14,087** words printed in a proportionally spaced typeface.

2.	This brief is printed in a proportionally spaced typeface using Times New Roman 14 point font in text and Time New Roman 12 point font in footnotes.

3.	Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.	Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

_____/s/ Chip B. Lewis_____

**Chip B. Lewis**

**APPENDIX**

Order Appointing April Smith.................................................................A

Motion to Recuse, Order of Recusal, and Order of Assignment ..............................B

Trial Court's Proposed Findings of Fact and Conculsion of Law ...........................C

CAUSE NO. W09-00248-Y(B)

EX PARTE                              *        IN THE CRIMINAL

DAMON WEST,                           *        DISTRICT COURT NO. 7

APPLICANT                             *        DALLAS COUNTY, TEXAS

## ORDER DESIGNATING ISSUES

Having considered the applicant's Application for Writ of Habeas Corpus and the State's Response, the Court finds that controverted, previously unresolved facts material to the legality of the Applicant's confinement exist. The Court finds that each of the allegations set forth in the application are controverted, unresolved factual issues which require additional evidence and/or testimony to be resolved.

The court appoints April E. Smith to resolve the issues and prepare findings of fact and conclusions of law for the Court. The issues may be resolved by affidavits, depositions, interrogatories, or by hearings, as deemed necessary by the person appointed herein.

*Above appointed attorney does not represent the Applicant. Applicant is not entitled to counsel at this time.*

The Clerk of the Court is ORDERED to send a copy of this order to Applicant, or Applicant's counsel (if so represented) and to counsel for the State.

Signed this ___15___ day of ___April___, 2013.

_____
JUDGE

**A**

Cause No. W09-00248-Y(B)

/21/30%

| EX PARTE | § | IN THE CRIMINAL |
| | § | |
| | § | DISTRICT COURT NO.7 |
| DAMON WEST, | § | |
| Applicant | § | DALLAS COUNTY, TEXAS |

## ORDER ON MOTION TO RECUSE

The Court, while it believes that it can be fair and impartial in this matter, understands how the public could perceive otherwise. Therefore, the Court has determined that this matter should be considered by another district court judge and that recusal is appropriate in this case;

**IT IS THEREFORE ORDERED** that Michael Snipes, presiding judge of the Criminal District Court Number 7, does hereby voluntarily recuse himself from hearing any future matter in this case and refers this cause to the Presiding Judge of the First Administrative Judicial Region for assignment.

The Clerk of the Court shall immediately transmit a copy of this Order to Judge Mary Murphy, Presiding Judge of the First Administrative Judicial Region and to counsel for the defendant and counsel for the State.

Signed this the ___/ 2___ day of May, 2014.

_____
JUDGE MICHAEL SNIPES
CRIMINAL DISTRICT COURT NO. 7
DALLAS COUNTY, TEXAS

B

# THE STATE OF TEXAS
## FIRST ADMINISTRATIVE JUDICIAL REGION
## ORDER OF ASSIGNMENT BY THE PRESIDING JUDGE

Pursuant to Section 74.056, Texas Government Code, I assign the:

Honorable Jeanine Howard

Active Judge of The Criminal District Court # 6 - Dallas

to the

Criminal District Court # 7 - Dallas of Dallas County, Texas

This assignment is for the cause(s) and style(s) as stated in the conditions of assignment from this date until plenary power has expired or the undersigned Presiding Judge has terminated this assignment in writing, whichever occurs first.

## CONDITION(S) OF ASSIGNMENT
No. W09-00248-Y(B); Ex parte Damon West

In addition, whenever the assigned Judge is present in the county of assignment for a hearing in the above cause(s), the Judge is also assigned and empowered to hear, at that time, any other matters presented for hearing.

It is ordered that the Clerk of the court to which this assignment is made, if it is reasonable and practicable and if time permits, give notice of this assignment to each attorney representing a party to a case that is to be heard in whole or in part by the assigned Judge.

It is further ordered that the Clerk, upon receipt hereof, shall post a copy of this order in a public area of the Clerk's office or courthouse in order that attorneys and parties may be advised of this assignment.

SIGNED: _May 12_, 20_14_
(Date)

_Mary Murphy_
Mary Murphy, Presiding Judge
First Administrative Judicial Region of Texas

Assign# 24596

Cause No. W09-00248-Y (B)

FILED
2014 APR 23 PM 4: 25
GARY FITZ_____
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| EX PARTE | § | IN DISTRICT COURT |
| | § | OF |
| DAMON WEST,<br>Applicant | § | DALLAS COUNTY, TEXAS |

## MOTION FOR RECUSAL OF TRIAL COURT JUDGE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Damon West, hereafter the Applicant, in the above-styled and numbered cause by and through his attorney of record Chip Lewis, and moves for the recusal of the Trial Court Judge in this case; and in support thereof would show as follows:

I.

Tex.R.Civ.P. 18b dictates the situations in which a trial judge should be recused from presiding over a particular case. Rule 18b applies to habeas proceedings that occur before the Trial Court Judge. *Ex Parte Sinegar*, 324 S.W.3d 578 (Tex.Crim.App. 2010).

II.

The trial judge, Michael Snipes, should be recused from presiding over this case because his impartiality can reasonably be questioned; he has demonstrated a personal bias and prejudice concerning the subject matter, the Applicant, and the matter in controversy; he has improperly expressed an opinion concerning the merits of the matter in controversy; and he has refused to follow the law.

It is the Applicant's burden to prove that Judge Snipes should be recused, the Applicant meets this burden by providing facts demonstrating the presence of bias or

partiality "of such a nature and extent as to deny the movant due process of law." *Office of Pub. Util. Counsel v. Public Util. Comm'n,* 185 S.W.3d 555, 574 (Tex.App.—Austin 2006, pet. denied); *Roman v. State,* 145 S.W.3d 316, 321 (Tex.App.—Houston [14th Dist.] 2004, pet. ref'd); *See Abdygapparova v. State,* 243 S.W.3d 191, 198 (Tex.App.—San Antonio 2007, pet. ref'd). In determining whether the Applicant has demonstrated this kind of bias on the part of Judge Snipes, "'the proper inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial.'" *Kniatt v. State,* 239 S.W.3d 910, 915 (Tex.App.—Waco 2007, order) (per curiam) (quoting *Burkett v. State,* 196 S.W.3d 892, 896 (Tex.App.—Texarkana 2006, no pet.)).

· III.

**Applicant's Writ is in Front of Judge Snipes**

The Applicant was convicted by a jury of the first-degree felony charge of Engaging in Organized Criminal Activity (EOCA), in which the underlying felony was burglary of a habitation, in a trial presided over by Judge Snipes on May 11, 2009. The jury then sentenced the Applicant to sixty-five (65) years in prison on May 18, 2009. Writ counsel filed an application for writ of habeas corpus on March 19, 2013, in W09-002480Y(B) (the Applicant's writ) that alleged in its sole ground for relief that the Applicant was denied the effective assistance of counsel at the punishment stage of his trial.

The Applicant's writ was served on the Dallas County District Attorney's Office (the State). The State filed a written response in which they stated that additional information was needed in order to determine the merit of the claims in the Applicant's writ. The State

2

agreed that a live evidentiary hearing should be conducted in the Applicant's writ.

**Judge Snipes Referred Applicant's Writ to Magistrate April Smith to "resolve the issues and prepare findings of facts and conclusions of law for the Court."**

Judge Snipes signed an Order Designating Issues on April 15, 2013, appointing Magistrate April Smith (Magistrate Smith) to preside over the Applicant's writ.

CAUSE NO. W09-00248-Y(B)

| | | |
|---|---|---|
| EX PARTE | * | IN THE CRIMINAL |
| DAMON WEST, | * | DISTRICT COURT NO. 7 |
| APPLICANT | * | DALLAS COUNTY, TEXAS |

### ORDER DESIGNATING ISSUES

Having considered the applicant's Application for Writ of Habeas Corpus and the State's Response, the Court finds that controverted, previously unresolved facts material to the legality of the Applicant's confinement exist. The Court finds that each of the allegations set forth in the application are controverted, unresolved factual issues which require additional evidence and/or testimony to be resolved.

The court appoints April E. Smith to resolve the issues and prepare findings of fact and conclusions of law for the Court. The issues may be resolved by affidavits, depositions, interrogatories, or by hearings, as deemed necessary by the person appointed herein.

*Above appointed attorney does not represent the Applicant. Applicant is not entitled to counsel at this time.*

The Clerk of the Court is ORDERED to send a copy of this order to Applicant, or Applicant's counsel (if so represented) and to counsel for the State.

Signed this _____15_____ day of _____April_____, 2013.

_____
JUDGE

3

In concert with the above court order, the Texas Government Code §54.311 clearly states that when a Magistrate is appointed to handle a writ that she "shall" transmit to the referring court any papers relating to the case, including the magistrate's findings, conclusions, orders, recommendations, or other action taken. Tex.Gov't Code Ann. §54.311 (Vernon 2013).

The Dallas Court of Appeals has reviewed this statute and stated that, "(i)t is clear from the wording of the act that it is *mandatory* that the district judge *review* the actions taken by the magistrate once he refers a matter to her. To review the magistrate's actions the district judge must have before him the record and any exhibits from the proceeding. Only after a careful review of the record and any exhibits is the district judge in a position to "modify, correct, reject, reverse, or recommit for further information any action taken by the magistrate." *Omura v. State*, 730 S.W.2d 766, 768 (Tex.App. – Dallas 1987, pet. ref'd.)(emphasis in original). In *Christian v. State* and *Ex Parte Allen*, the Dallas Appellate Court goes on to state that when the Magistrate transmits her findings based on her actions taken on the case to the referring Court that although not specifically required by the statute, "written findings are advisable to avoid confusion." *See Christian v. State*, 865 S.W.2d 198 (Tex.App.—Dallas 1993, pet. ref'd.) *citing Ex Parte Allen*, 699 S.W.2d 886, 889 (Tex.App.— Dallas 1985, pet. ref'd.).

The live evidentiary hearing was held in front of Magistrate Smith on September 5, 2013, at 9:30 a.m. During the hearing, the Applicant called trial counsel Ed Sigel and second chair counsel Karen Lambert to the stand. Witnesses Sigel and Lambert were questioned

4

extensively by the State and the Applicant on the issues presented in the Applicant's writ. At the end of the hearing Magistrate Smith informed both parties off-record that she was going to provide written findings to Judge Snipes recommending that relief be granted in accordance with the Applicant's writ due to the ineffective assistance of counsel Sigel as claimed in the Applicant's writ and proven during the hearing that she presided over. Magistrate Smith stated that she would allow both the State and the Applicant to provide her with written proposed findings of fact and conclusions of law (proposed findings) for her review before she finalized her own written findings of fact and conclusions of law (Magistrate's findings) and transmitted them to Judge Snipes. *Writ Hearing R.R.* at 154-156. The Applicant paid for the record to be produced, the court reporter Vicki Tuck emailed the 160-page record to the Applicant, and the Applicant forwarded that link on to the State and Magistrate Smith. Months later, the State requested the link again making it clear that they had not printed the record out for their own use or to transmit it to any other person.

The Applicant provided his proposed findings to the State and Magistrate Smith electronically on December 20, 2013, and filed them with the clerk's office on February 14, 2014. The State informed the Applicant that they would not agree to relief but did not provide or file their proposed findings until March 24, 2014. The State filed their findings in Judge Snipes' courtroom.

**Judge Snipes Signed the State's Proposed Findings without Allowing Magistrate Smith to File or Transmit her Findings**

After both sides filed their proposed findings, Magistrate Smith emailed and informed both Applicant and the State that she did not need anything else from the

5

Applicant and would let them know once she had completed and filed her findings of fact and conclusions of law with this Court.

Then, on March 31, 2014, Magistrate Smith informed the parties that Judge Snipes had mistakenly signed the State's proposed findings on March 25, 2014, (the day after they were filed by the State in his courtroom) and that she intended to ask Judge Snipes to withdraw the State's proposed findings until such time as she could file her own (as dictated by Judge Snipes' court order and the Government Code).

## ⟨⟩ Re: Damon West writ – State's Proposed FOF

**April E. Smith**

Sent: Monday, March 31, 2014 4:24 PM

  To: Jaclyn OConnor; Alicia O'Neill; Chip Lewis

  Cc: Karen Wise; Christine Womble

⟵ You replied to this message on 3/31/14 4:39 PM.

```
On March 26, 2014, Judge Snipes mistakenly signed the Proposed Findings
submitted by the State.  I will speak with him about it and have prepared an
Order Withdrawing those Findings for him to sign.

April Smith
```

The State then sent a communication regarding the merits of signing their proposed findings directly to Judge Snipes via electronic mail. They improperly reminded Judge Snipes of the high-profile nature of the Applicant's case by referencing its media nickname and then inquired as to whether Judge Snipes intended to grant relief in the Applicant's writ or intentionally signed their proposed findings to deny relief. Judge Snipes quickly and emphatically responded that he did not intend to grant relief to the Applicant and the State quickly replied by thanking him.

## RE: Damon West writ – State's Proposed FOF

**Christine Womble**

> Sent: Tuesday, April 1, 2014 11:09 AM
>> To: Michael Snipes
>> Cc: Karen Wise; Jaclyn OConnor; April E. Smith; Alicia O'Neill; Chip Lewis

Judge Snipes,

I wanted to check in with you regarding the status of the Damon West writ (this is the Uptown burglary case). Jaclyn Lambert is the prosecutor handling this writ for the State, but she is on maternity leave right now.

There was a hearing several months ago and since that time, two sets of findings have been generated. One granting relief (I'm not sure whether these were prepared by the writmaster, April Smith, or by the defense) and one denying relief (prepared by Jaclyn). Yesterday afternoon, April Smith sent out an email indicating that you signed off on the State's findings on March 26, but that she was preparing an order for you to sign withdrawing those findings.

I just want to verify with you that your recommendation in this case is to grant relief, or did you intend to sign the State's findings in which you would recommend that relief would be denied.

Please feel free to contact me if you have any questions/concerns.

Thank you,
Christine

Christine Womble
Assistant District Attorney, Appellate Division
Dallas County District Attorney's Office
Frank Crowley Courts Bldg.
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207
214.653.3638
214.653.3643 (fax)


## RE: Damon West writ – State's Proposed FOF

**Michael Snipes**

> Sent: Tuesday, April 1, 2014 11:17 AM
>> To: Christine Womble; Christina O'Neil
>> Cc: Karen Wise; Jaclyn OConnor; April E. Smith; Alicia O'Neill; Chip Lewis

Absolutely DID NOT grant relief! I have no idea where there that notion would have come from!

-----Original Message-----
From: Christine Womble
Sent: Tuesday, April 01, 2014 11:09 AM
To: Michael Snipes
Cc: Karen Wise; Jaclyn OConnor; April E. Smith; Alicia O'Neill; Chip Lewis
Subject: RE: Damon West writ - State's Proposed FOF

**RE: Damon West writ – State's Proposed FOF**

Christine Womble

Sent: Tuesday, April 1, 2014 11:20 AM

To: Michael Snipes; Christina O'Neil

Cc: Karen Wise; Jaclyn OConnor; April E. Smith; Alicia O'Neill; Chip Lewis

You replied to this message on 4/1/14 11:32 AM.

Thank you Judge.

```
Christine Womble
Assistant District Attorney, Appellate Division
Dallas County District Attorney's Office
Frank Crowley Courts Bldg.
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207
214.653.3638
214.653.3643 (fax)
```

The Applicant then replied by addressing the State on the email chain and requesting that the State agree to place the matter on Judge Snipes' docket so that the parties and Magistrate Smith could speak with Judge Snipes together in his courtroom to resolve this matter. The State agreed to do so only if Judge Snipes stated that this was necessary after he spoke with Magistrate Smith. Judge Snipes then, taking the State's suggested course of action instead of the Applicant's, asked Magistrate Smith to come and see him by herself. Magistrate Smith apparently went to see Judge Snipes and had an off-record conversation with him about her intention to provide findings in the Applicant's writ recommending that relief be granted. Magistrate Smith then sent an email stating that Judge Snipes informed her that he would not be granting relief in the Applicant's writ, and for that reason she would not be transmitting or filing her findings of fact and conclusions of law based on presiding over Applicant's writ and the related hearing after all.

8

## Re: Damon West writ – State's Proposed FOF

Alicia O'Neill

Sent: Tuesday, April 1, 2014 11:32 AM

To: Christine Womble

Cc: Michael Snipes; Christina O'Neil; Karen Wise; Jaclyn OConnor; April E. Smith; Chip Lewis

You forwarded this message on 4/1/14 12:57 PM.                    (Show Forward)

Ms. Womble,

This is a formal request that the State agree to place this matter on the court's docket as soon as practicable so that both parties and Ms. Smith can be present while addressing this matter with the court.

Ms. Smith's email to the parties yesterday absolutely did not state that Judge Snipes had granted relief in this matter. It stated that your findings had been signed in error before she had a chance to present her findings to the court, as per the procedure to which we all agreed.

This is best cleared up in a forum where all parties are present and can communicate with the court.

Thank you,

Alicia O'Neill

Sent from my iPhone


## RE: Damon West writ – State's Proposed FOF

Jaclyn OConnor

Sent: Wednesday, April 2, 2014 11:40 AM

To: Alicia O'Neill; Christine Womble

Cc: Michael Snipes; Karen Wise; April E. Smith; Chip Lewis

The State is agreeable to a meeting with all parties if Judge Snipes feels that is necessary after he confers with Ms. Smith.

April, if that is what the Court desires, please let us know a date that works for you and Judge Snipes and we can put it on the calendar.

Regards,

Jaclyn O'Connor Lambert
Assistant District Attorney
Appellate Division
Dallas County, Texas
214.653.3640


## RE: Damon West writ – State's Proposed FOF

Michael Snipes

Sent: Wednesday, April 2, 2014 1:01 PM

To: Jaclyn OConnor; Alicia O'Neill; Christine Womble

Cc: Karen Wise; April E. Smith; Chip Lewis

April,

Please come see me when possible regarding this matter.

9

**Damon West Writ**

April E. Smith

Sent: Thursday, April 3, 2014 4:40 PM
To: Jaclyn OConnor; Christine Womble
Cc: Alicia O'Neill; Karen Wise

↪ You forwarded this message on 4/3/14 9:28 PM.

Judge Snipes informed me today that he will not grant relief in this matter. Thus, I won't be filing any additional Findings of Fact.

April E. Smith, Attorney at Law-Mediator
P.O. Box 870550
Mesquite, TX 75187-0550
(972) 613-5751
(972) 686-4714 (Fax)
aesmithlaw@tx.rr.com

Magistrate Smith was unable to get Judge Snipes to withdraw the findings during their conversation. Judge Snipes did not subsequently withdraw the State's proposed findings nor did he ever indicate that he was willing to hear from the parties. Judge Snipes left the findings entered despite the fact that he was made aware that he signed them seven days before ever speaking with Magistrate Smith about the writ hearing that she presided over upon his referral and despite the fact that he did not allow her time to provide him with the record of the hearing or her findings and conclusions based on presiding over the writ.

Judge Snipes' actions violated the law, specifically Chapter 54 of the Texas Government Code, and his own order. He failed to review Magistrate Smith's actions – but more importantly he failed to even consider the evidence in the Applicant's writ, evidence that convinced his own Magistrate that the Applicant deserved a new punishment hearing, before passing judgment and signing the State's proposed findings almost as soon as they were filed.

**Judge Snipes Informed Magistrate Smith of his Explicit Bias Against the Applicant**

After her conversation with Judge Snipes, Magistrate Smith called writ counsel and informed writ counsel that upon being summoned to see Judge Snipes she informed him

10

that she intended to file findings granting relief according to the Applicant's writ claims. Magistrate Smith stated that Judge Snipes informed her that under no circumstances would he ever grant relief to the Applicant. Magistrate Smith stated that she would not be filing any findings because the referring court would not consider them and advised writ counsel that the proper procedure going forward would be to file objections and whatever other motions or actions counsel believed necessary.

Magistrate Smith stated that Judge Snipes signed the proposed findings before consulting with her and before she could provide him with her findings or with the record of the writ hearing. The record had never been provided to the Court by the court reporter, the Applicant, or Magistrate Smith, and has never been filed with the District Clerk's Office. When asked by Applicant's counsel on April 8, 2014, court reporter Vicki Tuck stated that she had not filed the record with the Dallas County District Clerk's Office or provided a copy of the record to Judge Snipes or to his court staff at any time.

**Texas Law Requires Judge Snipes' Recusal**

Judge Snipes ordered Magistrate Smith to resolve the issues in this writ, was informed that she conducted a hearing and that she believed relief should be granted, and yet he informed her that no matter what she had learned or resolved he would not review it, and would simply deny relief no matter what. Judge Snipes' bias is driven home by the fact that he did not read the record of the hearing or allow the Magistrate to file her findings before making his decision to sign the State's findings the day after they filed them. Judge Snipes' use of all caps and exclamation marks in his email back to the State is very telling of the deep personal bias he has against the Applicant and subject matter in this case. The Applicant has

11

filed a Motion with the Court of Criminal Appeals asking them to Mandamus Magistrate Smith to file her findings and conclusions as she is obligated to do under the law.

Applicant's writ contains claims that could only be properly litigated through the testimony given at the Applicant's hearing. Judge Snipes' own Order Designating Issues made the finding that, "each of the allegations set forth in the application are controverted, unresolved factual issues which require additional evidence and/or testimony to be resolved." Judge Snipes appointed Magistrate Smith to uncover that additional evidence and/or testimony and then ruled without ever speaking to her about it or formally reviewing it. Judge Snipes defeated what the Applicant was led to believe was happening in his writ by using the Magistrate system in Dallas County to appoint Magistrate Smith, allowing her to conduct a hearing, but then refusing to consider any of her fact findings or credibility determinations before passing judgment on the merits of the Applicant's writ.

That is the kind of prejudice and bias that this Court is not permitted to exercise. There is no doubt that upon learning of these circumstances that an average member of the public would have a reasonable doubt as to Judge Snipes' impartiality in this matter. Judge Snipes has behaved partially, demonstrated a personal bias and prejudice concerning the subject matter, the Applicant, and the matter in controversy, he has improperly expressed an opinion concerning the merits of the matter in controversy, and he has refused to follow the law.

IV.

This Motion to Recuse is not brought for the purpose of delay. Sufficient cause has been shown for the recusal of the Trial Court Judge. The Motion sets forth such facts as

would be admissible in evidence. Applicant does not wish to waive any ground for recusal stated in the instant Motion.

WHEREFORE, PREMISES CONSIDERED, the Applicant requests that the Trial Court Judge voluntarily recuse himself from any further proceedings in this case and that another trial judge be assigned to hear the case; or in the alternative, that the Trial Court Judge refer this matter to the presiding judge of the applicable administrative judicial region for a hearing on the allegations in said Motion.

Respectfully Submitted,

**CHIP B. LEWIS**
Attorney at Law
2120 Welch
Houston, Texas 77019
Texas Bar No. 00791107
Telephone: 713.523.7878
Fax Number: 713.523.7887

## CERTIFICATE OF SERVICE

I further certify that a copy of this motion has been mailed via U.S. mail to Judge Michael Snipes, at the following address on April 23, 2014:

Criminal District Court #7
Frank Crowley Courts Building
133 N. Industrial Blvd., LB-19
Dallas, Texas 75207-4399

I further certify that a copy of this motion has been mailed via U.S. mail to Jaclyn O'Connor Lambert and Christine Womble, attorneys for the State at the following address on April 23, 2014:

Dallas County District Attorney's Office
Appellate Division
Frank Crowley Courts Building
133 N. Industrial Blvd., LB-19
Dallas, Texas 75207-4399

_____
**CHIP B. LEWIS**

## CERTIFICATION

I, Chip B. Lewis, certify that I have reviewed this motion for recusal and have

concluded that every factual statement in the petition is supported by competent evidence.

_____
**CHIP B. LEWIS**

14

Cause No. W09-00248-Y (B)

EX PARTE                        §        IN DISTRICT COURT NO. 7

                                §        OF

DAMON WEST,                     §        DALLAS COUNTY, TEXAS
    Applicant

---

## ORDER OF VOLUNTARY RECUSAL

---

On the _____ day of _____, 2014 came on to be heard the Applicant's Motion to Recuse Trial Court Judge Michael Snipes, and after due consideration, said motion is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Judge Michael Snipes hereby **recuses himself** with respect to the above-captioned matter and therefore is disqualified from proceeding as Trial Court Judge in this matter.

SIGNED this _____ day of _____, 2014.

_____
**JUDGE PRESIDING**

15

Cause No. W09-00248-Y (B)

EX PARTE                          §        IN DISTRICT COURT NO. 7

                                  §        OF

DAMON WEST,                       §        DALLAS COUNTY, TEXAS
     Applicant

---

## ORDER GRANTING HEARING AND RECUSAL

---

On the _____ day of _____, 2014 came on to be heard the Applicant's Motion to Recuse Trial Court Judge Michael Snipes, and after due consideration, a hearing is hereby GRANTED.

After presiding over said hearing, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Judge Michael Snipes hereby **is recused** with respect to the above-captioned matter and therefore is disqualified from proceeding as Trial Court Judge in this matter.

SIGNED this _____ day of _____, 2014.

_____
**JUDGE PRESIDING**

16

WRIT NO.  W09-00248-Y(B)

| | | |
|---|---|---|
| EX PARTE | * | IN THE CRIMINAL |
| DAMON WEST, | * | DISTRICT COURT NO. 6 |
| APPLICANT | * | DALLAS COUNTY, TEXAS |

## TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

On this day came on to be considered Applicant's Application for Writ of Habeas Corpus and the State's Response.  Having considered these pleadings and the official court records, as well as all exhibits and affidavits offered by both parties, this Court enters the following findings of fact and conclusions of law.

## HISTORY OF THE CASE

Applicant was convicted of engaging in organized crime (EOC) and was sentenced to 65 years confinement.  His conviction was affirmed on direct appeal.  *See West v. State,* No. 05-09-00577-CR (Tex. App. -- Dallas, Mar. 8, 2011, pet. ref'd) (not designated for publication).

This is his second application for writ of habeas corpus.  His first, pro se, application was dismissed at Applicant's request by the Court of Criminal Appeals.

## ISSUES RAISED IN APPLICATION

Applicant asserts that he received ineffective assistance of counsel at the punishment phase of trial.

Findings of Fact and Conclusions of Law                                        Page 1 of 15

## RELEVANT EVIDENCE

On September 5, 2013, the Court conducted a live evidentiary hearing where lead counsel, Ed Sigel, and second chair counsel, Karen Lambert, testified.

## RELEVANT LAW

### Burden of Proof

Applicant has the burden to allege and prove by a preponderance of the evidence facts which entitle him to relief. *See Ex parte Maldonado,* 688 S.W.2d 114, 116 (Tex. Crim. App. 1985); *Ex parte Adams,* 768 S.W.2d 281, 288-289 (Tex. Crim. App. 1989). Conclusory allegations are not enough to warrant habeas relief. *Ex parte Young,* 418 S.W.2d 824 (Tex. Crim. App. 1967).

### Ineffective Assistance of Counsel

When an Applicant alleges ineffective assistance of counsel, Applicant must first prove that counsel's representation fell below an objective standard of reasonableness; and secondly, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have differed. *Strickland v. Washington,* 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 54-55 (Tex. Crim. App. 1986). The right to counsel does not guarantee errorless counsel whose competence is judge by hindsight; rather, it affords a defendant an attorney reasonably likely to render reasonably effective assistance. *See Thompson v. State,* 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Counsel's competence is presumed, and Applicant must rebut this

presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Kimmelman v. Morrison,* 477 U.S. 365, 384 (1986); *Thompson,* 9 S.W.3d at 814. Counsel has a duty to present mitigating evidence. *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S. Ct. 2527, 2536, 156 L. Ed. 2d 471 (2003).

## FINDINGS OF FACT

This was a very high-profile, complex case involving the burglary of many residences in the Uptown area of Dallas, Texas, among others. There were numerous complainants and numerous agencies involved in the case. (WR-114).

Sigel was retained by Applicant's family sometime prior to October 18, 2008. The specific date cannot be ascertained because Sigel has no records or files from this case, or any of his cases, in his possession. Sigel did not provide a reason for this. (WR-8; WR: Exhibits 23 and 24).

From the outset, Sigel had difficulty communicating with Applicant. Thus, Sigel had Applicant examined for competency. (WR: 45, 72, 78). Applicant was found to be competent. (WR: 78). Sigel testified that he believed Applicant was using drugs while in the jail. (WR: 45).

Sigel requested that the Court appoint an investigator to assist him in this case. Cliff Jenkins was the appointed investigator. (WR: 82-83). The Court does not assign investigators. Rather, they are selected by defense counsel. Sigel admitted that Jenkins was

an experienced investigator. (WR: 83).

The evidence in this case was voluminous. (WR: 22). In addition to the voluminous paper discovery, there were several hours of jail calls made by Applicant which were recorded by the State. (WR-116-117).

Sigel never discussed the possibility of a "slow plea" with Applicant. (Application Exhibit 2). Sigel testified that he had never done that [type of disposition] in his many years of criminal practice. (WR: 177). Lambert indicated that, based on her review of the discovery, there was no reason to question the witnesses regarding whether three persons were involved in these offenses (proving EOC element). (WR: 120-122).

Applicant acknowledges the "overwhelming" evidence of his guilt in his affidavit attached to the application (Application Exhibit 2.) Applicant states that had he known of the option of pleading guilty and having the jury assess punishment, he would have done so. However, counsel never discussed that option of disposing of the case with him. Applicant states that it was always his desire to mitigate punishment and obtain the least possible sentence. In fact, Applicant rejected the State's offer of 40 years confinement based on Sigel's advice that the offer was too high. Further, Sigel told Applicant that he was not guilty of the EOC portion of the indictment and Sigel believed Applicant had been overcharged by a zealous prosecutor. (WR-29, 67-68).

This case was set for trial in January or February 2009. However, Sigel had a medical emergency (involving surgery) and the case was reset for May 11, 2009. (WR: 12; Exhibit

3). The May 11, 2009 setting was a "special set" meaning that the case would proceed on that date.

Due to Sigel's medical emergency, Cliff Jenkins, discussed the case with Applicant's family and suggested they hire a second attorney to assist in the case. (Exhibit 3). On March 12, 2009, Karen Lambert was retained to sit as second chair in the case. (Exhibit 3). Karen Lambert was a chief felony prosecutor in Dallas County for ten years. (WR: 102). Lambert has practiced criminal defense law for 20 years. (WR: 102). Lambert is well-respected among the criminal bar in Dallas County. Lambert has tried over 300 cases to verdict. (Exhibit 3).

Sigel considered Jenkins' suggestion for Applicant's family to hire Lambert to be a "betrayal" by Jenkins. (WR: 190-195). In fact, Sigel began writing a book called "Betrayal" based on this case. (WR: 196). Further, he considered Lambert to be "an idiot". (WR: 203-204). Sigel's disrespect and contempt for Lambert is apparent from the transcription of his interview with writ counsel and his testimony at the writ hearing. (WR: 1-304). Sigel said that Lambert was only hired to assist with the psychological witnesses. (WR: 103).

Despite being hired less that two months prior to trial, Lambert immediately began reviewing the evidence. (WR: 109). She believed Sigel needed to file another Motion to Suppress due to the number of search warrants involved in the case. (WR: 106). Sigel filed said Motion and a hearing was held. (WR: 107-108).

Lambert believed all strategy decisions and means of disposing of the case had already

been discussed with Applicant prior to her becoming involved in the case. (WR: 111). This is especially credible given that the case had been set for trial at least one time prior to Lambert's retention.

Lambert requested several meetings with Sigel prior to trial, including the Sunday before jury selection was to begin. (WR: 110). Sigel refused to meet with her or to discuss how she could assist him, which witnesses he wanted her to direct or cross, or any matters of trial strategy. (WR: 109-111). Lambert was told immediately before voir dire began that she would be allowed to participate in voir dire. (WR: 111). Lambert discussed mitigation with the jury. When Sigel began his voir dire, Lambert was immediately concerned because it was so confusing to the panel. (WR: 110-111).

At trial, Sigel had no organized notes but had some files or folders in a box. (WR: 113). Lambert, on the other hand, had prepared a three-ring-binder that was organized by the various complainants. (WR: 114). Lambert had the notebook on the table and Sigel had access to it. (WR: 114-115). In her words, "So I had it [the notebook] out there so if we needed it to refer to a witness that was being called or, you know, whatever, we could get to the information quickly." (WR: 115). When asked if she refused to let Sigel see the notebook, she responded, "Absolutely not. That's what I was there for was to assist him." (WR: 115). In Judge Snipes' court, organization is key because the case proceeds quickly and efficiently. As Lambert stated, "You cannot be stumbling around and fumbling through files." (WR: 114-115). Lambert tried to get Sigel to use some of the "evidence" in her trial

notebook, but was not successful. (WR: 115).

Sigel's trial strategy amounted to what he termed "the nickel defense" or "the truth defense" wherein he wanted all evidence in front of the jury, admissible or inadmissible, in order to show that the defense was not hiding anything and that Applicant and defense counsel were telling the truth. (WR: 14-16). Lambert was unaware of this defense. (WR: 111-112). Sigel believed that if the jury knew the truth about Applicant and if Applicant expressed remorse, that Applicant would receive a probated sentence or "a nickel" (five year) sentence. (WR: 14-16).

Normally, the attorney conducting the direct or cross of a particular witness is the one who objects to evidence sought to be admitted. (WR: 124). Here, Sigel failed to object numerous times even when Lambert suggested he do so. (Exhibit 3). Due to Sigel's failure to object, Lambert objected to inadmissible evidence to preserve issues for appeal. (WR: 124). In fact, at one point, Judge Snipes, sua sponte, asked if counsel wanted the jury to be instructed to disregard testimony about Applicant's oral confession and sent the jury out of the courtroom himself. (WR: 38).

Sigel did not provide Lambert with a witness list or even discuss with her what, if any, witnesses he was going to call at trial. (WR: 118-119; Exhibit 3).

After meeting with mental health experts on May 1, 2009, Lambert volunteered to present their testimony at trial. Lambert also agreed to present the testimony of Applicant's ex-girlfriend at trial. (Exhibit 3).

Any other participation by Lambert in direct exam or cross-exam of witnesses was communicated to her during trial and was, many times, at her suggestion. (Exhibit 3).

Lambert's affidavit mentions many areas of Sigel's cross-examination of witnesses that she would not have employed. (Exhibit 3). She also lists numerous instances where Sigel should have objected to testimony. (Exhibit 3). She also lists how Sigel decided to proceed in the trial in a manner she would not have chosen. (Exhibit 3).

Lambert, once the Application was filed, reviewed the affidavits of Applicant's brothers, Grayson and Brandon, and of his longtime friend, Danielle Degadillo. These persons were not called as witnesses at trial. Lambert believed their testimony would have been helpful to "humanize Mr. West and provide insight into the behavior-altering effects of addiction." (Exhibit 3).

Lambert believed a slow plea would have been the best means to proceed in this case in an effort to mitigate punishment. (Exhibit 3). Lambert, while present when Applicant and Sigel were in the same place both before and during trial, never heard Sigel give Applicant any advice or admonishments regarding his plea, his decision whether to testify, case strategy or witness selection. (Exhibit 3).

Sigel did not review the voluminous evidence presented by the State prior to trial. (WR: 122). Rather, he relied on his investigator to review the evidence. (WR: 5-101). And, he relied on the prosecutor's version of events and Applicant's statement that no female was involved in the offense (thus no EOC element) without doing any independent investigation.

(WR: 79). When questioned about his knowledge of Applicant's oral statement, Sigel said, "It [sic] was a whole lot of stuff there [in State's file]. And I may have been." (WR: 35). Sigel continued, "But you have no idea how much stuff they had. It's a big job trying to go through everything with [Applicant] and that's why Jenkins, the investigator, was paid by Judge Snipes $8,000 to do that." (WR: 36).

Sigel did not prepare witnesses for their testimony except to tell them "to tell the truth." (WR: 28, 99). After his medical emergency, Sigel's mental faculties declined. He was unprepared for trial in this case. (WR: 122, 145). He did not believe mitigating evidence was necessary because Applicant chose not to testify. (WR: 22-23). Sigel did not discuss the necessity for mitigating evidence with Applicant. (WR: 17; 232). Nor did he review evidence with Applicant prior to trial. (WR: 36).

Sigel was "flying by the seat of his pants" in this case due to his failure to properly prepare for trial. Sigel had no concept of the legal requirements to obtain a jury instruction for voluntary intoxication and did not understand the law regarding EOC. (WR: 8-11, 54-60). Sigel believed Applicant was innocent of the EOC portion of the charge and so advised him. (WR: 30-31). This contributed to Applicant's decision not to plead guilty.

Sigel stated that Applicant would have obtained a much lesser sentence had Applicant followed Sigel's advice and testified in compliance with Sigel's "nickel defense" strategy. Counsel's sole advice to Applicant was "to tell the truth". (WR: 18). Lambert requested that Sigel not question certain witnesses or that he not ask them certain questions; Sigel declined

Findings of Fact and Conclusions of Law

to accept her advice. (WR: 124, 131). Lambert, after observing Sigel's acts in trial, believed she needed to step in and take over questioning of witnesses. (WR: 132). She feared the witnesses had not been prepared to testify. (WR: 132-133).

At the writ hearing, Sigel testified that he had open-heart surgery and no longer has a good memory. (WR: 40). As an example of Sigel's confusion, during the writ hearing, when questioned whether he mainly practiced criminal law, Sigel responded, "I'm doing right now the uptown burglary. That's this one." (WR: 76). At the conclusion of his testimony at the writ hearing, Sigel stumbled leaving the witness stand. When the Court inquired whether he was okay, Sigel responded, "No. It's a long story. They gave me this medicine, Judge." (WR: 101).

When errors or omissions were pointed out to Sigel at the writ hearing, he responded by blaming Lambert, saying, "I'm not the only lawyer in the case -- Karen Lambert was the lawyer. That was her job." (WR: 41). Another time, when questioned about why a motion in limine was not filed, he responded, "I don't think we wanted -- I wanted to keep it out and Karen didn't file a motion." (WR: 43). He then said he didn't want to keep it out. (WR: 43-44).

While there is no guarantee that mitigating evidence from Applicant's brothers and his best friend would have lightened his sentence, the jury should have heard this evidence. Counsel had a duty to present mitigating evidence. Without that evidence, the jury only heard the State's theory that Applicant was a privileged athlete from a good family with

advantages who committed these burglaries. (WR: 129). The prosecutor also argued that the witnesses presented on Applicant's behalf at punishment had not had any interaction with Applicant for the previous five years. (Application Exhibit 5; RR: 123). The prosecutor requested that the jury begin deliberating his sentence at "the top" and take off five years "if you find something good." (Application Exhibit 5: RR: 124). She indicated that 51 years [for each victim who recovered property] "would be insulting." (Application Exhibit 5: RR: 123-124).

The Court finds that Sigel's "nickel defense or truth defense" was not proper trial strategy in this case in that he allowed inadmissible, damaging evidence to be presented which harmed Applicant. Sigel failed to object to the testimony regarding Applicant's oral (inadmissible) statement. (Writ Exhibit 6). Sigel failed to properly investigate the case and fully understand the charge against Applicant. Sigel did not have a firm command of the facts or law regarding EOC or voluntary intoxication.

Sigel told Applicant to look up the law in the jail law library himself. (WR: 92). Sigel incorrectly informed Applicant that the State could not prove the EOC part of the indictment. (WR: 23, 30-31, 68, 121, 128-129, 150-151). Sigel did not discuss the case with Applicant stating, "It was a big job to go through everything with Damon" because Applicant was in jail. (WR: 35-36). Sigel did not review evidence with Applicant prior to trial, but waited until trial for Applicant to hear (and learn of) some of the evidence against him. (WR: 36, 39).

Findings of Fact and Conclusions of Law                                    Page 11 of 15

Sigel failed to object to the speculative testimony that Applicant possessed a police officer's identification and the testimony that Applicant intended to use it to commit crimes while impersonating a police officer. (Writ Exhibit 7). This evidence was not admissible. TEX. R. EVID. 402, 403, 602 and 701.

Sigel's cross-examination clearly showed his lack of preparation and investigation or knowledge of the State's evidence. Sigel elicited damaging testimony during his cross-examination. Sigel repeatedly led Chatham to testify that Applicant could not have known he would be out-of-town when the evidence showed that the offenses were intentionally committed when no one was home. Sigel elicited testimony that Applicant's probation papers were found in a car. Sigel elicited testimony that Applicant possessed Viagra and methamphetamine when arrested. Sigel asked open-ended questions of the lead detective, Solis, allowing him to testify that Applicant stole women's underwear to intimidate them, he ate and drank in the homes because he was not scared of the female victims' returning, and had they come home, Applicant would have harmed them. Solis also testified that Applicant did not leave fingerprints because he had a stock-pile of gloves, Solis identified Applicant as the burglar when one victim did not do so, and that the car Applicant was driving when arrested belonged to his brother, Grayson, which invited the State to argue that Grayson was the victim of Applicant's most egregious crime. (Writ Exhibit 8-13).

Sigel advanced numerous unreasonable trial strategies due to his unpreparedness. Specifically, Sigel asserted that voluntary intoxication was mitigating under Texas law

without attempting to allege or prove insanity; questioned many witnesses and presented witnesses that advanced the State's theory that Applicant was a privileged athlete who did not deserve leniency; humiliated a witness by having her state her bra size when there was no such contested issue; failed to make an opening statement at punishment; and had witnesses Haddad recount the medals her deceased fiancee was awarded in his service in Iraq which caused her to become more emotional and more sympathetic. (Writ Exhibits 15-19). Lambert recommended that Sigel not cross-examine this witness at all. (WR: 131).

Sigel failed to interview or call as punishment witnesses, Brandon and Grayson West and Danielle Degadillo, all of whom had been in contact with Applicant during the time surrounding these offenses. (WR: 16-30). Grayson and Brandon were present during the trial and were available to be called as witnesses. (Writ Exhibits 20-22; WR: 16-30). Sigel did not know that these witnesses could testify to their on-going, meaningful and close relationships with Applicant during the time these offenses were being committed and that Applicant was not himself when on methamphetamine (as when these offenses were committed). (WR: 25). Counsel stated that the jury sentence was harsh because "the jury just didn't know Damon West." (WR: 91, 96, 239-240). These witnesses would have contributed to the mitigation evidence. Failing to call these witnesses allowed the State to argue that the defense witnesses were worthless because the were politicians who had not interacted with Applicant for more than five years. (Writ Exhibit 5). It also allowed the State to argue that the jury should begin by considering a life sentence and "take off five" for

every good thing they had heard about Applicant at trial. (Writ Exhibit 5).

Sigel's strategy to tell the truth was compromised by his inability to communicate with Applicant as indicated when he spoke about Applicant testifying at trial. Sigel testified, "I don't even think he understood what I was saying." (WR: 18-19, 87-88).

The Court recognizes the trial strategy of truth-telling and not wanting to mislead the jury. However, counsel cannot be effective when he fails to object to inadmissible evidence, and speculative and inadmissible statements that are harmful to his client. Further, counsel cannot be effective with the "truth strategy" when he cannot communicate it to his client and when he is unprepared and does not know the law or evidence.

The Court finds that Applicant has proven each of the allegations regarding ineffective assistance of counsel raised in his application.

## CONCLUSIONS OF LAW

Applicant has proven that he received ineffective assistance of counsel. Applicant proved that counsel's representation fell below an objective standard of reasonableness. And he proved that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have differed.

Applicant proved that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.

Applicant has been denied the rights guaranteed him by the United States Constitution or the Texas Constitution.

## COURT'S RECOMMENDATION

This Court recommends that this writ of habeas corpus be GRANTED.

## ORDERS OF THE COURT

In implementing the Court's Finding of Fact and Conclusions of Law, the Clerk will:

1. Prepare a transcript of papers in this cause and transmit the Court's Order and the Findings of Fact and Conclusions of Law, including the judgment and indictment, all plea papers, if any, and the Court of Appeals opinion, if any, to the Court of Criminal Appeals as provided by TEX. CODE CRIM. PROC. ANN. art. 11.07.

2. Send a copy of this Order and the Findings of Fact and Conclusions of Law to Applicant's counsel, Chip B. Lewis, 2120 Welch, Houston, TX 77019, and to counsel for the State, Jaclyn O'Connor Lambert, Assistant District Attorney, 133 N. Riverfront Blvd. LB-19, Dallas, TX 75207 by depositing same in the U.S. Mail.

Signed and entered July 14, 2014.

_____
JUDGE

WRIT NO.  W09-00248-Y(B)

EX PARTE                    *        IN THE CRIMINAL

DAMON WEST,                 *        DISTRICT COURT NO. 7

APPLICANT                   *        DALLAS COUNTY, TEXAS

## ORDER APPROVING RECORD ON WRIT APPLICATION

The record on the application for Habeas Corpus in the above entitled and

numbered cause having been presented to the Court for approval, and the Court

having no objections to said record, hereby approves the same as truly reflecting all

matters and proceedings had and done in this cause.

Signed and entered July 14, 2014.

_____
JUDGE